IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 10-94027-MHM |
| FAMOUS RECIPE COMPANY ) | |
| OPERATIONS, LLC, ) | Chapter 11 |
| ) | |
| Debtor. ) | |
| ) | |

**DEBTOR'S MOTION FOR ORDER AUTHORIZING PAYMENT OF
THE PRE-PETITION CLAIMS OF CERTAIN CRITICAL TRADE VENDORS**

FAMOUS RECIPE COMPANY OPERATIONS, LLC, the debtor and debtor-in-possession in the above-captioned case (the "**Debtor**"), hereby moves the Court (the "**Motion**") for entry of an order authorizing the payment of the pre-petition claims of certain critical trade vendors.  In support of this Motion, the Debtor incorporates the statement contained in the Affidavit of Jeffrey Miller and further respectfully represents as follows:

**Background**

1. The Debtor commenced the above-captioned reorganization case by filing a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") on November 11, 2010 (the "**Petition Date**").

2. The Debtor remains in possession of its assets and continues to operate its business as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3. The Debtor develops, operates and franchises quick service restaurants under the "Mrs. Winner's" brand name.  The Mrs. Winner's brand restaurants were founded in 1977.  They were acquired by various entities over the years, including Granny's Chicken and RTM, Inc., now known as Arby's Restaurant Group, Inc.

1

4. On May 8, 2006, pursuant to an Asset Purchase Agreement ("**APA**") between Winners International Restaurants, Inc., Mrs. Winners, LP, Lee's Company Operations, Inc. and Winners Partners and Lee's Famous Recipes, Inc. ("**LFR**"), LFR acquired 114 "Mrs. Winner's" brand restaurants, 91 of which were company operated stores and approximately 23 franchised stores in seven states (60 in Georgia, 42 in Tennessee, 1 in Alabama, 2 in Mississippi, 2 in Arkansas, 1 in Kentucky, 6 in North Carolina) together with twelve (12) parcels of real property on which certain of the restaurants were located. As part of the APA, LFR was assigned interests in certain leases for a number of the purchased Mrs. Winner's brand restaurants.

5. In conjunction with LFR's asset purchase, Famous Recipe Company Operations, LLC ("**FRCO**"), the Debtor herein, was formed to acquire all of the non real estate assets. LFR then assigned its interest in all of the 91 company operated stores to the Debtor. The Debtor, as tenant, entered into numerous agreements to lease properties so that it could operate Mrs. Winner's brand restaurants.

6. In 2009, 24 company operated stores in the Nashville, Tennessee area were sold to Church's Chicken. Since then, the brand has closed numerous stores. Most recently, in October 2010, 34 company-owned Mrs. Winner's brand restaurants were closed.

7. The Debtor currently operates 14 company-owned, 2 licensed and 16 franchised Mrs. Winner's brand restaurants in Georgia, Tennessee and North Carolina. The Debtor presently has approximately 300 employees. The Debtor is a lessee or sublessee pursuant to approximately 50 unexpired leases of nonresidential real property.

8. The current estimated value of the Debtor's assets is approximately $2.1 million. The Debtor has estimated liabilities of approximately $6.8 million, including approximately $3.3 million for federal withholding taxes. The Debtor's operations have not been profitable. The

Debtor's rehabilitation requires reorganization of its operations and capital structure. The Debtor is in the process of implementing a business plan designed to reduce costs, improve operations, and assure the Debtor's long-term viability. Among other things, in recent weeks, the Debtor has identified unprofitable locations, closed 34 restaurants, and terminated administrative, accounting, and other management personnel and support services to the Debtor.

## Jurisdiction

9. This Court has jurisdiction to consider and determine this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

10. The quick service restaurant business is highly competitive. The dominant features of the consumable-goods industry are high-volume sales and low-profit margins. Even small changes in pricing can have significant impact on companies like the Debtor.

11. By the nature of its business, the Debtor deals with vendors that are typically the sole suppliers of uniquely branded products for which there are no viable substitutes, such as food products from major food distributors (the "**Merchandise Suppliers**"). The Debtor estimates that over 90% of the goods it distributes are branded products for which there is only one supplier. While for the remaining 10% of goods, the Debtor may be able to find alternative sources of supply, in the vast majority of cases, the Debtor is operating on timelines of a matter of days to supply the goods, which makes it impractical to find alternate sources of goods in such a short period of time.

12. In addition to the Merchandise Suppliers, the Debtor relies on other vendors to support its core business functions by way of administrative and ancillary support, such as

3

production of advertising circulars for goods distributed and the repair and maintenance of equipment (collectively, with the Merchandise Suppliers, the "**Critical Vendors**").

13. The Debtor operates sixteen (16) restaurants. Many of the Critical Vendors, with whom the Debtor has long standing relationships, represent the Debtor's only viable source of critical goods and products in such communities. Failure to satisfy the Critical Vendors claims may render the Debtor unable to obtain necessary concessions-inventory, food service, and repairs/equipment services at certain of its restaurants. Delay or interruption in the Debtor's ability to obtain these critical goods and services would have a significant adverse effect on its estate. Thus, the ability to assure a continuous and uninterrupted supply of goods and services provided by the Critical Vendors will increase the likelihood of a successful reorganization.

14. The Debtor proposes to pay the prepetition claims (the "**Critical Vendor Claims**") of the Critical Trade Vendors that agree to supply the Debtor with inventory or services on credit terms and limits that are the same or better than those provided to the Debtor during the calendar quarter immediately prior to the Petition Date (the "**Acceptable Credit Terms**"). The Debtor reserves the right to obtain written confirmation of the Acceptable Credit Terms prior to paying any Critical Vendor Claim.

15. The Debtor estimates that, as of the Petition Date, it will need to pay Critical Vendor Claims up to $10,000/week towards arrearages of $425,000.00 (approximate) outstanding pre-petition claims.

## Basis for Relief

16. Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua*

>    *sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of discretion.

11 U.S.C. § 105(a).

17. Section 105(a) of the Bankruptcy Code grants bankruptcy courts broad authority and discretion to enforce the provisions of the Bankruptcy Code either under specific statutory fiat or under applicable equitable common law principles.

18. Numerous courts have used their Bankruptcy Code § 105(a) equitable powers under the "necessity of payment" doctrine to authorize payment of a debtor's pre-petition obligations where, as here, such payment is necessary to effectuate the "paramount purpose" of chapter 11 reorganization, which is to prevent the debtor from going into liquidation and to preserve the debtor's potential for rehabilitation. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."). This equitable common law principle "was first articulated by the United States Supreme Court in *Miltenberger v. Logansport, C. & S.W.R. Co.*, 106 U.S. 286, 1 S.Ct. 140, 27 L.Ed. 117 (1882) and is commonly referred to as either the 'doctrine of necessity' or the 'necessity of payment' rule." *Id.* at 176. "The necessity of payment doctrine recognizes that paying certain pre-petition claims may be necessary to realize the goal of chapter 11 – a successful reorganization." *In re Just For Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999).

19. This doctrine also has been invoked if nonpayment of a pre-petition obligation would trigger a withholding of goods or services essential to the Debtor's business reorganization plan. *See UNR Industries*, 143 B.R. 506, 520 (Bankr. N.D. Ill. 1992), *rev'd on other grounds*.

20. As noted above, the Critical Vendors supply goods and services to the Debtor that either cannot be readily replaced or are provided on terms such that the Debtor would be forced to incur higher costs to obtain comparable goods and services elsewhere, depleting the Debtor's operating cash at a time when liquidity is most critical to the Debtor.

21. This Court has authorized payments to vital suppliers and trade creditors under similar circumstances. *See, e.g.*, *In re Atlantis Plastics, Inc., et al.*, Case No. 08-75473 (Bankr. N.D. Ga. Aug. 10, 2008); *In re Blue Thunder Auto Transport, Inc., et al.*, Case No. 07-61268 (Bankr. N.D. Ga. Feb. 1, 2007); *In re Dan River, Inc.*, Case No. 04-10990 (Bankr. N.D. Ga. April 12, 2004); *In re Centennial Healthcare Corp., Inc.*, Case No. 02-74974 (Bankr. N.D. Ga. Dec. 24, 2002).

22. Based upon the foregoing, the Debtor submits that the relief requested in this Motion is essential, appropriate and in the best interests of the Debtor's estate and all parties in interest.

### Request for Authority of Banks to Honor and Pay Checks and Funds Transfers Related to Critical Vendor Claims

23. The Debtor also requests by this Motion that all applicable banks and other financial institutions (the "**Banks**") be authorized and directed, when requested by the Debtor in the Debtor's sole discretion, to receive, process, honor and pay any and all checks presented for payment of, and to honor all fund transfer requests made by the Debtor related to Critical Vendor Claims, whether such checks were presented or fund transfer requests were submitted prior to or after the Petition Date, provided that sufficient funds are available to make the payments. The Debtor represents that these checks are drawn on identifiable disbursement accounts and can be identified as relating directly to the authorized payment of Critical Vendor Claims.

24. Nothing contained herein is intended or should be construed as: (a) an admission as to the validity of any claim against the Debtor; (b) a waiver of the Debtor's right to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular claim constitutes a Critical Vendor Claim; or (e) a request to assume any executory contract or unexpired lease, pursuant to Section 365 of the Bankruptcy Code.

25. Furthermore, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the stay of the order authorizing the use, sale or lease of property under Bankruptcy Rule 6004(h), to the extent those provisions apply.

### Notice

26. The Debtor proposes to serve notice of the filing of this Motion and the hearing to consider the relief requested herein via facsimile, e-mail and/or overnight mail to: (i) the Office of the United States Trustee for the Northern District of Georgia; (ii) the Committee of Creditors Holding Unsecured Claims; (iii) the Debtor's twenty (20) largest unsecured creditors; (iv) the Debtor's secured creditors; (v) the Banks; and (vi) those persons who have formally appeared and requested service in this case. In light of the nature of the relief requested, the Debtor submits that no other or further notice need be provided.

27. No previous request for the relief sought herein has been made by the Debtor to this or any other Court.

[SEE FOLLOWING PAGE]

**WHEREFORE**, the Debtor respectfully requests that the Court enter and order grating the relief requested herein and granting the Debtor such other and further relief as the Court deems just and proper.

This 24th day of November, 2010.

                                    JOHN J. McMANUS & ASSOCIATES, P.C.

                                    /s/ John J. McManus
                                    John J. McManus
                                    Counsel for Debtor
                                    Georgia Bar No. 497776

3554 Habersham at Northlake
Tucker, Georgia 30084
(770) 492-1000
(770) 492-1100 (facsimile)
jmcmanus@mcmanus-law.com