IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| **FAMOUS RECIPE COMPANY OPERATIONS,** | ) | Case No. **10-94027 - MHM** |
| **LLC, d/b/a Mrs. Winner's Chicken & Biscuits,** | ) | |
| | ) | |
| Debtor. | ) | |

**MOTION PURSUANT TO 11 U.S.C. § 364(C) FOR INTERIM AND FINAL
AUTHORITY TO ENTER INTO AN INSURANCE PREMIUM FINANCE
AGREEMENT WITH FLATIRON CAPITAL, A DIVISION OF WELLS FARGO
BANK, N.A.; REQUEST FOR SHORTENED NOTICE FOR INTERIM RELIEF;
AND REQUEST FOR FINAL HEARING**
(Expedited Hearing Requested Pursuant to BLR 9013-4)

COMES NOW, Famous Recipe Company Operations, LLC *dba* Mrs. Winner's Chicken & Biscuits, debtor (*"Debtor"*), and hereby moves this Court pursuant to 11 U.S.C. § 364(c)(1), Fed. R. Bankr. P. 4001(c)(2) and BLR 9013-4, for authority to (a) enter into a premium finance agreement (the *"Agreement"*) with FLATIRON CAPITAL, a Division of Wells Fargo Bank, N.A. (*"Premium Finance Company"*); (b) grant Premium Finance Company a security interest in all unearned or returned premiums which may become payable under the policies identified in the Agreement; and (c) grant Premium Finance Company a claim with priority over any and all administrative expenses of the kind specified in 11 U.S.C. § 503(b) or 507(b) pursuant to 11 U.S.C. § 364(c)(1), as to any unpaid amounts owed in the future under the Agreement. In support of its Motion, Debtor states as follows:

1. On November 10, 2010 (the "***Petition Date***"), Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Under §§ 1107 and 1108 of the Bankruptcy Code, Debtor continues to operate its business as a debtor in possession.

2. On November 23, 2010, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "***Committee***"). The Committee promptly held its organizational meeting, interviewed several law firms, and voted to retain Hunton & Williams LLP as counsel.

3. Debtor currently operates fourteen (14) "Mrs. Winner's" style quick-service chicken restaurants.

4. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this case and venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought herein is § 364 of the Bankruptcy Code.

## RELIEF REQUESTED

5. In the ordinary course of business, Debtor must maintain various insurance policies in order to continue its operations. Debtor is unable to pay in a lump sum, in the ordinary course of business, the premiums for the insurance policies identified in the Agreement, and has been unable, after reasonable efforts, to obtain unsecured credit for such payment pursuant to 11 U.S.C. § 364(b).

6. Debtor has engaged in discussions with various companies in the business of providing insurance premium financing and has determined that Premium Finance

Company offers the most advantageous terms for such financing. A copy of Debtor's Agreement is attached as Exhibit "A."

7. The insurance policies identified in the Agreement are crucial to the operation of Debtor's business and cannot be obtained without the relief requested herein. Thus, the relief sought herein is in the best interest of the estate and its creditors.

8. The Agreement requires Debtor to make a down payment in the amount of $29,455.00 and to make 9 monthly payments, each in the amount of $7,801.06. In return, the Premium Finance Company will advance, as a lump sum, the amounts owed for the next year on the policy. The annual percentage rate for this advance is 5.72 percent and the total amount financed under the Agreement is $68,565.00, with total payments under the Agreement amounting to $70,209.54.

9. The Agreement grants Premium Finance Company a lien and security interest in any and all unearned or returned premiums which may become payable under the policies identified in the Agreement. Debtor requests, and the proposed interim order submitted herewith and attached hereto as Exhibit "B" (the *"Interim Order"*), provides that Premium Finance Company's lien and security interest in such premiums shall be senior to the rights of Debtor's estate in this and any subsequent proceeding under the Bankruptcy Code and to the rights of any person claiming a lien or security interest in any assets of Debtor to the extent allowed by 11 U.S.C. § 364(c)(1).

10. The Agreement also assigns to Premium Finance Company a lien and security interest to secure any loss payment under the policies, but only to the extent such loss payments would reduce the unearned premiums. Debtor requests that Premium

Finance Company's lien and security interests in such payments shall be senior to the rights of Debtor's estate in this or any subsequent proceeding under the Bankruptcy Code, but shall be subject to the interest of any mortgagees or other payees. Debtor requests that Premium Finance Company also be granted a superpriority claim in connection with this financing.

11. Debtor requests and the Interim Order provides Premium Finance Company's liens and security interests shall be deemed duly perfected without further action by Premium Finance Company.

12. Bankruptcy Rule 4001(c)(2) states:

> [t]he court may commence a final hearing on a motion for authority to obtain credit no earlier than 15 days after service of the motion. If the motion so requests, the court may conduct a hearing before such 15 day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

Fed. R. Bankr. P. 4001(c)(2)

13. The circumstances warrant the Court grant **interim** relief to Debtor pursuant to Rule 4001(c)(2). In order to put in place the insurance coverage with respect to the proposed Agreement, the premiums are due. Accordingly, in order to obtain the economic benefits of the proposed financing, and avoid substantial up front, lump sum payments which Debtor's estate cannot afford, interim relief to make the initial payment of $29,455.00 due on June 2, 2011 is warranted, pending final approval by the Court. If full 15 day notice is required, there is a distinct risk that certain coverage may be cancelled. Debtor has been working diligently over the past several weeks to obtain the

best and most affordable insurance coverage. In so doing, Debtor saved thousands of dollars in premiums by way of the proposed Agreement. Under the circumstances, Debtor submits interim relief is appropriate. The Committee has been consulted by Debtor's counsel and has no objection to the grant of interim relief under the circumstances.

14. In the event of a default by Debtor in making the monthly payments under the Agreement, but subject to ten days prior notice to Debtor and the Committee and Debtor's right to cure, the Agreement allows Premium Finance Company to cancel the insurance policies identified in the Agreement and apply to Debtor's account the unearned or returned premiums and, subject to the rights of loss payees, any loss payments which would reduce the unearned premiums. Debtor requests that Premium Finance Company may exercise its rights under the Agreement in the event of any such default without moving for relief from the automatic stay of 11 U.S.C. § 362 and without further order of this Court, subject to the notice provisions set forth above.

15. Premium Finance Company is extending financing under the Agreement in good faith within the meaning of 11 U.S.C. § 364(e).

WHEREFORE, Debtor prays that the Court enter an Interim Order in the form of Exhibit "B" hereto; shorten the notice and time to object to this Motion and grant any Interim Order hereunder, set a final hearing on any objections to the Motion and entry of a Final Order, and grant such other and further relief as it may deem appropriate.

- 6 -

This 27th day of May, 2011.

                                          JOHN J. MCMANUS & ASSOCIATES, P.C.

                                          /s/
                                    _____
John J. McManus
Georgia Bar No. 497776
Christian Turner
Georgia Bar No. 142611
John J. McManus & Associates, P.C.
2167 Northlake Parkway, Suite 104
Tucker, Georgia 30084
Tel:   770-492-1000
Fax:  770-492-1100
Email: jmcmanus@mcmanus-law.com
cturner@mcmanus-law.com

Counsel for Debtor

# **EXHIBIT A**



**PREMIUM FINANCE AGREEMENT**
**SECURITY AGREEMENT, DISCLOSURE STATEMENT AND LIMITED POWER OF ATTORNEY**

| | | | |
|---|---|---|---|
| Flatiron Capital<br>950 17th St. Suite 1300<br>Denver, CO 80202 | "LENDER" | SEND PAYMENTS TO:<br>FLATIRON CAPITAL<br>DEPT 2195<br>DENVER, CO 80271-2195 | CHECK APPROPRIATE BOX(S)<br>☑ COMMERCIAL<br>☐ RENEWAL |

PHONE: 800-800-2767        FAX: 800-813-8428                    QUOTE NUMBER  232262

| PRODUCER (Insurance Agent/Broker) NAME, ADDRESS and PHONE NUMBER | BORROWER (Insured) NAME, ADDRESS, and PHONE NUMBER | ☐ BORROWER in Bankruptcy<br>Chapter<br>7   11   13 |
|---|---|---|
| Willis Insurance Services of Georgia, Inc. - Atlanta<br>1 Glenlake Parkway<br>Ste 1100<br>Atlanta, GA 30328<br><br>404-224-5000<br>AGENT NO. 315527 | Famous Recipe Company Operations LLC<br>Mrs. Winner's Chicken & Biscuits<br>Po Box 3004<br>Mcdonough, GA 30253<br><br>404-459-4044 | BORROWER SSN/FEIN<br><br>XXXXXX7630 |

### 1. SCHEDULE OF FINANCED POLICIES

| NAME OF INSURANCE COMPANY AND GENERAL AGENT | TYPE OF POLICY | POLICY NUMBER | EFFECTIVE DATE | MIN EARNED (%) | SUBJECT TO AUDIT? | POLICY TERM (months) | PREMIUM (1)<br>FIN TXS/FEES (2)<br>NON-FIN TXS/FEES (3) |
|---|---|---|---|---|---|---|---|
| 1930  Axis Surplus Insurance Company | PROP | | 5/2/2011 | 25% | | 12 | $25,000.00 |
| 10441  RT Specialty (fka McAuley Woods) | | | | | | | $1,000.00 |
| | | | | | | | $35.00 |

Additional Policies Are Listed On The Attached Schedule of Policies

### 2. CERTAIN FINANCIAL TERMS

| A | -B | =C | +D | +E | =F : (C+D+E) | |
|---|---|---|---|---|---|---|
| TOTAL PREMIUMS AND RELATED FEES | DOWN PAYMENT REQUIRED FROM BORROWER | AMOUNT FINANCED<br>Amount of credit provided to you or on your behalf. | STATE SPECIFIED TAXES OR FEES | TOTAL FINANCE CHARGES<br>Dollar amount the credit will cost you. | TOTAL OF PAYMENTS<br>Amount paid after making all scheduled payments. | ANNUAL PERCENTAGE RATE<br>Cost of your credit as a yearly rate. |
| $98,020.00 | $29,455.00 | $68,565.00 | $0.00 | $1,644.54 | $70,209.54 | 5.72% |

### 3. PAYMENT SCHEDULE

| NUMBER OF PAYMENTS | PAYMENT FREQUENCY | | DAY OF MONTH PAYMENTS ARE DUE | AMOUNT OF EACH PAYMENT | FIRST PAYMENT DUE DATE |
|---|---|---|---|---|---|
| | Monthly | Quarterly | | | |
| 9 | Monthly | | 2nd | $7,801.06 | 6/2/2011 |

### 4. REQUIRED DISCLOSURES

**SECURITY INTEREST:** Borrower hereby grants Lender a security interest in all insurance policies listed above and all unearned premium, return premium, dividend payments, and loss payments thereof.
**LATE CHARGE:** If a payment is not made by the 5th day past due (or such later date as required by law), then Borrower will be charged a late charge (SEE SECTION 10 "LATE CHARGE" ON THE ADDITIONAL PROVISIONS PAGE OF THIS AGREEMENT FOR STATE SPECIFIC INFORMATION).
**PREPAYMENT:** If Borrower pays off early, Borrower will not have to pay a penalty and may be entitled to a refund of part of the finance charge.
**CONTRACT REFERENCE:** See the rest of this Agreement below, and ADDITIONAL PROVISIONS page, for additional information about nonpayment, default, required prepayment in full before the scheduled date, prepayment refunds and penalties.

### 5. PAYMENT PROVISIONS:
Borrower promises to pay to Lender at Lender's address above, or such other place as Lender may designate, the Total of Payments shown above in consecutive periodic payments in the number, amounts, and at the dates disclosed in the above "Payment Schedule" until loan is fully paid. Any payments made by Borrower after default shall be credited to the then outstanding balance due under this Agreement. INSURED agrees that all installment payments due under this Agreement must be made directly to LENDER and payment made by INSURED to any other person, firm, agency or corporation do not constitute payment unless and until received by LENDER.
**PREMIUM FINANCE NOTICE TO BORROWER / INSURED:** (1) DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACE. (2) YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THIS AGREEMENT. (3) KEEP YOUR COPY OF THIS AGREEMENT TO PROTECT YOUR LEGAL RIGHTS. (4) UNDER THE LAW, YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND UNDER CERTAIN CONDITIONS TO OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGES.

When signed below by you, or on your behalf, you (Borrower) acknowledge receipt of a copy of this Agreement, acknowledge having full power and authority to enter into this Agreement and sign on behalf of all entities named above as Borrowers, and that you agree to the provisions printed above and on the ADDITIONAL PROVISIONS section of this Agreement and that both the front and any subsequent pages constitute the Agreement between Borrower and Lender. Borrower hereby requests Lender to pay the financed portion of its insurance policy premiums listed above, on its behalf.

_____    _____    _____
DATE                        SIGNATURE OF BORROWER/INSURED(S) OR DULY AUTHORIZED AGENT OF BORROWER(S)    PRINT NAME & TITLE

**PRODUCER REPRESENTATION**
THE UNDERSIGNED REPRESENTS AND WARRANTS: By signing or submitting this Premium Finance Agreement, the Producer makes the Producer's Representations and Warranties printed on the ADDITIONAL PROVISIONS page of this Agreement and agrees to be bound to the terms of this Agreement. Producer also agrees that there has been no assignment of any interest in the insurance policy(ies) except for the assignment to Lender and Lender may assign this Agreement, including Producer's Representations and Warranties under its normal course of business.

_____    _____    _____
DATE                        SIGNATURE OF PRODUCER (AGENT/BROKER)                                PRINT NAME & TITLE

MState JAN 11 v6

## SCHEDULE OF POLICIES

| NAME OF INSURANCE COMPANY AND GENERAL AGENT | TYPE OF POLICY | POLICY NUMBER | EFFECTIVE DATE | MIN EARNED (%) | SUBJECT TO AUDIT? | POLICY TERM (months) | PREMIUM (1) FIN TXS/FEES (2) NON-FIN TXS/FEES (3) |
|---|---|---|---|---|---|---|---|
| 1866  Chubb Custom Insurance Co | GL | | 5/2/2011 | 25% | ✓ | 12 | $30,000.00 |
| 10441 RT Specialty (fka McAuley Woods) | | | | | | | $1,200.00 |
| | | | | | | | $35.00 |
| 74    Federal Insurance Co (Chubb) | NOA | | 5/2/2011 | 0% | | 12 | $1,500.00 |
| 10441 RT Specialty (fka McAuley Woods) | | | | | | | $0.00 |
| | | | | | | | $0.00 |
| 1696  North River Insurance Company | UMB | | 5/2/2011 | 0% | | 12 | $12,000.00 |
| 10441 RT Specialty (fka McAuley Woods) | | | | | | | $0.00 |
| | | | | | | | $0.00 |
| 1422  National Union Fire Ins Co Of Pittsb | CRIM | | 5/2/2011 | 0% | | 12 | $6,100.00 |
| | | | | | | | $0.00 |
| | | | | | | | $0.00 |
| 2035  RSUI Indemnity Company | DO | | 5/2/2011 | 0% | | 12 | $21,150.00 |
| 11460 ARC Excess & Surplus | | | | | | | $0.00 |
| | | | | | | | $0.00 |

## ADDITIONAL PROVISIONS OF PREMIUM FINANCE AGREEMENT

6. **RIGHT TO PREPAY:** Borrower shall have the right to prepay, in whole or in part, the amounts due hereunder at any time without penalty. Upon prepayment in full Borrower shall receive a refund of the unearned finance charge computed in accordance with the Rule of 78's (except in AZ, CA, IA, ME, MA, MO, MT, NJ, OR, PA, UT, VT, and VA, where the refund of any finance charge will be computed by the actuarial method, computed daily as 1/365th). If such prepayment in full occurs before the 1st installment due date, Lender shall retain the finance charge which could be retained if the 1st installment period were 1 month and the loan were prepaid in full on the 1st installment due date (except in AZ, CA, CO, IA, ME, MA, NJ, OR, PA, SD, UT, TX, VT, and VA, where the finance charge retained will be computed based on the number of days from the Inception Date to the date the loan is paid in full). Any finance charge in excess of such amounts shall be refunded to Borrower. If a refund is less than $1.00, no refund shall be made. There is a minimum finance charge as follows: $15 in HI; $25 in CA, CO, ME; $36 in IN.

7. **NON-REFUNDABLE FEES:** Part of the finance charge includes a $20 nonrefundable fee except as follows: $10 in AK, AZ, CT, DC, DE, KS, LA, MO, NY, PA, WA; $12 in MT and NJ; $15 in AL, KY, MA, NC, RI, SC, TN, VA; $18 in MI; $25 in NV; $50 in OR.

8. **BAD CHECK CHARGE:** Borrower shall be charged a fee of $20 ($15 in CA, FL, LA, MS, NV, or SD and $10 in AZ, MA or OH, $0 in KY) if payment of Borrower is not honored when presented to the bank on which drawn. If payment is not honored, certified funds may be required for subsequent payments.

9. **ATTORNEYS FEES:** In the event Lender has to engage an attorney (not an employee of Lender) to collect any unpaid balance, Borrower agrees to pay any and all reasonable and necessary collection costs as allowed by state law (15% in ME, TN; 20% in AZ, FL, MS, MO, NV, NH, NY; 25% in LA, VT; only if principal balance was $1,000 or greater in ID; commercial only in IA, WV; none in KY, SD).

10. **LATE CHARGE:** So long as financing a commercial insurance policy Borrower shall pay a late payment charge equal to 5% (or such lesser amount as decided by Lender at its sole option) of the payment amount due for each payment not received by Lender within 5 days (or such greater number of days as may be required by applicable law) with the due date counted as Day 1.

11. **CANCELLATION CHARGE:** If a default by the Borrower results in cancellation of any insurance policy listed in the "Schedule of Financed Policies", the Borrower will pay Lender an amount equal to the maximum cancellation charge permitted by law except no cancellation charge will be assessed in MD.

12. **EVENT OF DEFAULT:** Lender upon Borrower's default in any payment, or upon any other act of default under this Agreement is authorized to accelerate and declare due and payable the entire unpaid balance of this note, less unearned finance charges. Other acts of default for which the unpaid balance may be accelerated include any check given by Borrower for the down payment or any future payment due under this Agreement which is not honored when presented to the bank on which drawn; misrepresentation by the Borrower as to the policies being finance; or, if any insurance company issuing an insurance policy referred to herein becomes insolvent, suspends business, or ceases to be qualified to do business. Provided in VA and LA, Lender may not cancel nor request cancellation of the policy(ies) or insurance for any default other than a default of payment of money due Lender or a default consisting of the transfer of policy(ies) to a third party. Interest will accrue on the unpaid balance until Lender has received payment in full. Borrower hereby waives presentment, protest and notice of dishonor. No delay or omission on Lender's part to exercise any right or power arising hereunder will impair any such right or power or be considered a waiver for any such right or power, nor will Lender's action or inaction impair any such right or power. Borrower agrees unpaid balances may be added to any new premium finance agreement. All terms of this Agreement will apply.

13. **LENDER:** Flatiron Capital is a division of Wells Fargo Bank, N.A.

14. **PAYMENTS AFTER DEFAULT/ REINSTATEMENT:** Any payments made to Lender after confirmation of cancellation of the insurance policy or policies has been mailed may be credited to Borrower's accounts without affecting the acceleration of the Agreement and without any liability or obligation on Lender's part to request reinstatement of the cancelled policy or policies. If Lender requests reinstatement, Borrower agrees that Lender has no liability to Borrower if the policy is not reinstated. Only the insurance company has the authority to reinstate a policy financed pursuant to this Agreement.

15. **IRREVOCABLE LIMITED POWER OF ATTORNEY:** Borrower irrevocably appoints Lender as attorney-in-fact of Borrower, with full power of substitution and authority upon default to cancel the policy(ies) listed on this Agreement, with full power to sign or otherwise execute the policy(ies) and to collect or receive unearned premiums, dividend payments, and loss payments which may become payable under said policy(ies).

16. **AGENT OR BROKER:** Borrower understands and agrees that Lender is not acting as an insurance carrier, agent or broker and shall have no liability as such. Borrower understands and agrees that the Producer is the Borrower's insurance agent or broker and not the agent of Lender (except in Virginia if 14 VAC 5-390-70 provides otherwise) and that the Producer as such insurance agent or broker has no power or authority to make agreements or enter into contracts for Lender.

17. **EFFECTIVE DATE OF AGREEMENT:** This Agreement has no force until Lender's written acceptance is mailed to Borrower.

18. **NOTIFYING INSURANCE COMPANY:** Borrower authorizes Lender, at Lender's option, to notify any and all insurance companies issuing insurance policies covered by this Agreement of the terms of this Agreement, and Borrower directs that such insurance companies honor all provisions of this Agreement.

19. **BORROWER ASSIGNMENT:** Borrower represents and warrants to Lender that the insurance policy(ies) set forth herein, or a binder for such policy(ies), has been issued to Borrower and is (or are) in full force and effect, and that there has been no assignment of any interest in the insurance policy(ies) except for the assignment to Lender provided herein. Borrower agrees that Lender may assign this Agreement without notice to Borrower and in such event this Agreement shall inure to the benefit of and be binding to such assignee.

20. **AUDITABLE POLICIES:** With regard to any policy set forth in the "Schedule of Financed Policies", which is an auditable or reporting form type, Borrower agrees to promptly pay to the insurance company, the managing general agent or the agent, as applicable, the difference between the actual earned premium generated for the policy and the premiums financed under this Agreement.

21. **INSOLVENCY:** The Borrower represents they are not insolvent or presently the subject of any insolvency proceeding, nor are any such proceeding contemplated. Or if the named Borrower is the subject of such proceeding it is noted on the premium finance agreement in the space on the 1st page of the Agreement.

22. **ADDITIONAL PREMIUMS:** Only those premiums shown will be advanced on behalf of the Borrower. Payment of any additional premiums is the responsibility of the Borrower. Should the Borrower desire to finance any additional premiums, written request must be provided to Lender with appropriate down payment.

23. **PROHIBITION AGAINST USURY:** Under no circumstances shall Borrower have to pay more interest than is allowed under applicable law for this type of loan, and if Lender inadvertently contracts for charges, or receives more interest than allowed, Lender will refund the excess to Borrower.

24. **ILLEGALITY:** If any provision contained in this Agreement should be invalid, illegal or unenforceable in any respect, it shall not affect or impair the validity, legality and enforceability of the remaining provisions of this Agreement.

25. **CHANGES IN WRITING:** Lender is authorized to correct errors and omissions in the agreement. Modifications and amendments or waivers made to this Agreement by Borrower must be made in writing to Lender and approved by Lender.

26. **FINANCING OPTION:** Entry into this financing arrangement is not a condition of obtaining insurance. You may opt to pay the premium for such insurance without financing such premium, or to obtain financing from some other source if you choose.

27. **CHOICE OF LAW AND VENUE:** This Agreement shall be governed by, construed, and enforced in accordance with the laws of the State of Colorado, and any action to enforce this Agreement shall be brought in a court of competent jurisdiction located in Denver, Colorado.

## PRODUCER'S REPRESENTATIONS AND WARRANTIES

Producer hereby represents and warrants as follows: (1) This Agreement was complete as to all of its provisions and disclosures before it was signed by the Borrower or its authorized representative (if permitted by applicable law) and Borrower was delivered a completed copy at time of signature. (2) The signature of Borrower is genuine, and Borrower, or Producer under written authorization of Borrower, has full power and authority to enter into this Agreement. (3) The insurance policy(ies) listed in this Agreement are in full force and effect and the policy details are correct as stated herein and Producer is authorized by the issuing insurance companies (or their designated general agents) to produce the policy(ies) listed herein. (4) The down payment has been paid by Borrower and forwarded to the respective issuing insurance company(ies) (or general agent(s) on their behalf). (5) Producer acknowledges it is NOT an agent or representative of Lender. (6)Unless noted herein, all policies being financed are cancellable, none are subject to retrospective rating, none are or become fully earned at any time for any reason before the expiration of policy term stated in the schedule of financed policies and each premium financed represents the full anticipated premium for policy term. (7) Any lien or claim on funds of Borrower, or relating to the financed policies made by Producer shall be subordinate to Lender until Lender has been paid all amounts due to it under this Agreement. (8) Shall hold Lender harmless from, and indemnify Lender against, any loss resulting from errors, omissions or inaccuracies of Producer in preparing this agreement. (9) Shall be liable for any loss (up to the Amount Financed plus interest due and collection costs) suffered by Lender, if due to Producer's Representations and Warranties being false. (10) To the best of Producer's knowledge, no proceeding(s) in bankruptcy, receivership or insolvency have been instituted or are contemplated by or against the Insured. (11) All names, addresses, amounts and other statements of fact contained in this Agreement are true and correct. (12) Is duly licensed and authorized to act in its capacity as a broker or agent, as applicable, in connection with the transactions contemplated by this Agreement.

MState Jan 11 v6

**EXHIBIT B**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: ) | Chapter 11 |
| ) | |
| **FAMOUS RECIPE COMPANY OPERATIONS,** ) | Case No. **10-94027** - MHM |
| **LLC, d/b/a Mrs. Winner's Chicken & Biscuits,** ) | |
| ) | |
| Debtor. ) | |

**INTERIM ORDER APPROVING AUTHORITY TO ENTER
INTO AN INSURANCE PREMIUM FINANCE AGREEMENT**

Upon the motion, dated _____, 2011 (the *"Motion"*), of Famous Recipe Company Operations, LLC (*"Debtor"*) pursuant to 11 U.S.C. § 364(c)(1) and Fed. R. Bankr. P. 4001(c)(2), for entry of an order authorizing Debtor to (a) enter into a premium finance agreement (the *"Agreement"*) with FLATIRON CAPITAL, a Division of Wells Fargo Bank, N.A. (*"Premium Finance Company"*); (b) grant Premium Finance Company a security interest in all unearned or returned premiums which may become payable under the policies identified in the Agreement; and (c) grant Premium Finance Company a claim with priority over any and all administrative expenses of the kind specified in 11 U.S.C. § 503(b) or 507(b) pursuant to 11 U.S.C. § 364(c)(1), as to any unpaid amounts owed in the future under the Agreement.

The Motion and notice of the hearing were served upon parties in interest. Debtor contends that notice was sufficient and no other further notice is necessary. Hearing on the Motion was held on _____, 2011. Present at the hearing were Debtors'

counsel (John J. McManus), counsel for the Committee (Mark I. Duedall) and counsel for the United States Trustee (James Morawetz).

**NOW, THEREFORE**, based upon the Motion, it is hereby:

**ORDERED** that the Motion is granted; and it is further

**ORDERED** that Debtor is authorized on an interim basis to enter into and perform under the Agreement; and it is further

**ORDERED** that Debtor is authorized to pay all amounts due with respect to the Agreement; and it is further

**ORDERED** that in the event of a default by Debtor in making payments under the Agreement, Debtor and the Committee must receive ten (10) days prior written notice of intent to terminate the Agreement in order to cure before the Agreement can be automatically terminated; and it is further

**ORDERED** that, notwithstanding the applicability of Rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

**ORDERED** that this Court shall, and hereby does, retain jurisdiction with respect to all matters arising from or related to the implementation and interpretation of this Order; and it is further

**ORDERED** that a final hearing on the relief sought in the Motion shall be held on _____, 2011 at _____.

IT IS SO ORDERED, this the _____ day of _____, 2011.

_____
MARGARET H. MURPHY
UNITED STATES BANKRUPTCY JUDGE

**Prepared and Presented By:**
JOHN J. MCMANUS & ASSOCIATES, P.C.

_____/s/_____
John J. McManus
Georgia Bar No. 497776
Christian Turner
Georgia Bar No. 142611
John J. McManus & Associates, P.C.
2167 Northlake Parkway, Suite 104
Tucker, Georgia  30084
Tel:   770-492-1000
Fax:  770-492-1100
Email: jmcmanus@mcmanus-law.com
          cturner@mcmanus-law.com

Counsel for Debtor

**No Objection:**
HUNTON & WILLIAMS LLP

_____/s/_____
Mark I. Duedall
Georgia Bar No. 231770
Ian Labitue
Georgia Bar No. 593904
Suite 4100
600 Peachtree Street, N.E.
Atlanta, Georgia 30308-2216
Tel:   404-888-4034
Fax:  404-602-8864
Email: mduedall@hunton.com
          ilabitue@hunton.com

Counsel for the Committee

## CERTIFICATE OF SERVICE

This is to certify that I, John J. McManus, have this date served a true and correct copy of the foregoing by the Court's ECF system, which will generate an electronic mail, with a link to the motion attached, to all parties that have appeared in this case.

This 27th day of May, 2011.

/s/ John J. McManus
John J. McManus
Georgia Bar No. 497776