IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 10-94027-MHM |
| FAMOUS RECIPE COMPANY ) | |
| OPERATIONS, LLC, ) | Chapter 11 |
| ) | |
| Debtor. ) | |

**SECOND AMENDMENT TO THE FIRST FEE APPLICATION OF JOHN J. McMANUS & ASSOCIATES, P.C, ATTORNEY FOR DEBTOR, FOR APPROVAL OF INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES**

**COMES NOW** John J. McManus & Associates, P.C. ("Applicant"), counsel for Famous Recipe Company Operations, LLC ("Debtor"), and files this its second amendment to its first application for approval of interim compensation and reimbursement of expenses pursuant to 11 U.S.C. § 330 (Doc. No. 153) (the "Application"). Applicant hereby incorporates its first amendment to its fee application (Doc. No. 183, filed May 10, 2011) and additionally shows the Court as follows:

1.  Applicant originally requested that it be allowed $164,218.02 in total fees and expenses incurred. Applicant thereafter reduced that amount to $148,118.02 by amendment (Doc. No. 183). Due to the accounting software used, Applicant was unable to produce a redline document showing which invoiced items were edited or deleted from the original request to the amended request. However, the document attached hereto as **Exhibit "A"** summarizes those changes.

2.  Applicant uses QuickBooks® accounting software. The format of the invoices created from that software is set by the software program. However, Applicant will be careful in the

1

future to include the most detailed descriptions of services rendered as possible. Below, Applicant provides more details for certain of its invoiced items:

    a. 11/18/10 (CTurner): Research for this line item was principally for (i) payment of critical vendors and (ii) payment of Debtor's employees for pre-petition work performed. Debtor and Sysco Atlanta LLC and Sysco Memphis LLC ("Sysco") discussed early on in this case identifying Sysco as a critical vendor and paying Sysco for prepetition amounts due in order for Sysco to continue providing goods and services to Debtor. Applicant researched the propriety of doing so, as there is no specific provision in the bankruptcy code authorizing such a payment. Applicant also researched other similar motions, specifically in the Northern District of Georgia Bankruptcy Court.

    b. 12/8/10 (CTurner): Applicant performed research (1.4 hours) regarding proposed orders for the three motions set for hearing on December 10, 2010. Applicant reviewed and analyzed other similar orders in cases in the Northern District, specifically before Judge Murphy, in order to propose orders that were in compliance and consistent with forms that have been approved and entered in previous cases.

    c. 12/9-10/10 (CTurner): Applicant performed research (4.2 hours) for the three motions that were set for hearing on December 10, 2010 and prepared for the hearing, including drafting bullet points of the arguments for each motion and points of fact and law for each motion (2.8 hours). Applicant performed research in order to be prepared to legally support Debtor's positions on each motion and to meet any objections or questions that might arise.

    d. 12/14/10 (CTurner): Applicant performed research regarding the obligations of a

2

debtor, pursuant to Section 365 of the Bankruptcy Code, for rent and other obligations (including property taxes) for the post-petition period of an existing lease prior to formal rejection of that lease. The issue of post-petition administrative expenses for rent pursuant to Debtor's leases had been raised by certain landlords and was a pertinent issue to research and analyze given Debtor's desire to continue business operations at those locations and Debtor's desire to assume the pertinent leases.

      e.  12/28/10 (CTurner): Applicant performed additional research (1.4 hours) to support its motion to have Sysco deemed a "critical vendor" and allowed payment for prepetition invoices (via a super-priority payment). Specifically, Applicant analyzed its motion and proposed order in light of the decision in *In re Kmart Corporation*, 359 B.R. 866, 868 (7th Cir. 2004) regarding payment of critical vendors, including how that decision had been interpreted in Eleventh Circuit courts.

    As for payment of Debtor's employees, there was a question of whether Debtor's former employees that were not employed as of the Petition Date were nonetheless entitled to priority status under 11 U.S.C. § 507(a)(4) (2.2 hours of research). The Official Committee of Unsecured Creditors filed a limited objection to Debtor's motion on that ground and Applicant performed research to support Debtor's position that all employees of Debtor, whether employed as of the Petition Date or not, were entitled to receive wages earned in the 180 days prior to filing. Ultimately, Debtor's position was accepted by the Court and Debtor's current and former employees were paid much needed monies for wages earned.

      f.  1/6/11 (CTurner): Debtor was able to reject all leases for closed stores without objection, with the exception of the store locations owned by GE Capital Franchise Finance

3

Corporation ("GE"). GE's objection was reviewed, analyzed and researched by Applicant (2.4 hours). This was needed because a hearing on Debtor's motion to reject leases, including those of GE, was scheduled to be held on January 10, 2011. Ultimately, an order was entered by the Court rejecting all non-GE leases of real property. Debtor and GE later entered into a consent order, settling and agreeing upon a rejection date and the turnover of GE's property, to the extent remaining.

      g. 1/14/11; 1/17/11 (CTurner): Applicant performed research regarding monetary obligations of a debtor for rejected leases of non-residential real property (2.8 and 1.2 hours, respectively). This was done in part because of continuing negotiations and discussions with GE regarding its six leased stores, and was done in further part to generally ascertain Debtor's exposure for cure payments and pre-petition arrearages for its remaining 14 store locations.

      h. 1/21/11 (CTurner): Applicant performed additional research and reviewed caselaw concerning payment of critical vendors for prepetition amounts due as well as the granting of a super-priority for such payment under Section 507 of the Bankruptcy Code (3 hours). From the time Debtor and Sysco first discussed deeming Sysco a critical vendor and motioning for payment to Sysco of prepetition amounts owed, the terms of settlement changed multiple times. The parties went from initial discussions of cash installment payments to the granting of a super-priority claim to be paid upon the occurrence of one of several events in the future of Debtor's case. Ultimately, Debtor and Sysco agreed to, and the Court approved, a super-priority claim with no cash payments due from Debtor and in a total amount significantly less than Sysco's original prepetition arrearage.

      3.     Below, Applicant also provides the approximate amount of total time spent on the

4

various motions it filed with the Court during the time period covered by the Application. This time includes everything from researching and drafting the motions and orders, to communications, negotiations, discussions, and editing in response to objections or comments from opposing counsel, counsel for the Creditors' Committee, and/or counsel for the U.S. Trustee. It is difficult to provide exact amounts, but the following are good faith approximations:

    a.    Debtor's emergency motion for order authorizing the continued use of its cash management system and maintenance of existing bank accounts (Doc. No. 21): 8.5 hours. As has been openly stated by Debtor on numerous occasions, in the beginning of this case, there was a great deal of confusion and miscommunication between Debtor and Bank of America regarding the closing of Debtor's prepetition bank accounts and the opening of new, debtor-in-possession, accounts. At the time of filing the motion, the situation was at the point where many post-petition checks and wire requests were not being honored, and there were grave concerns that Debtor's business would be seriously affected, especially in light of the fact that Debtor had no DIP financing available to it and was relying completely on the daily receipts from each of its restaurants for the operation of the business. Additional time was spent on this motion in light of objections filed by the Official Committee of Unsecured Creditors and the U.S. Trustee. This motion was ultimately granted and the issues with Debtor's bank accounts resolved.

    b.    Debtor's motion for order authorizing the payment of prepetition employee wages (Doc. No. 22, amended by Doc. No. 65): 15 hours. Due to the timing of Debtor's payment of its employees and the filing of the petition, there was a "stub" period of time, prepetition, where Debtor's employees earned wages that were to be paid post-petition. Primarily out of concern for

5

these employees, nearly all of which are lower income earners who rely heavily on their wages, Debtor brought this motion and was ultimately successful in getting its employees paid. The complicating factor for the Applicant was taking raw data from Debtor's payroll processing company as to the amounts due to both current and former employees of Debtor and converting that data into two separate spreadsheets/exhibits to the motion. In light of the objections from the Official Committee of Unsecured Creditors and the U.S. Trustee, and at the request of the Court at the initial hearing on this matter on December 10, 2010, Debtor created these two separate spreadsheets for employees employed as of the Petition Date and for employees that had been terminated prior to the Petition Date. This motion was also granted and Debtor's employees, both current and former, were able to receive wages rightfully owed them.

    c.  Debtor's motion to pay certain critical trade vendors (Doc. No. 23, amended by Doc. No. 121): 20 hours. When Debtor originally filed this motion, Sysco had already been identified as a critical vendor. There was at least one additional vendor that Debtor believed to be critical, but was later deemed not to be. The motion was originally filed because Sysco required Debtor to make some immediate movement toward getting Sysco's prepetition arrearage addressed, otherwise Sysco would discontinue service to Debtor, which would have put the Debtor completely out of business in relatively short order. As discussed above, the negotiations with Sysco, which also included the Official Committee of Unsecured Creditors, were extensive and continued for the first several months of this case, ultimately culminating in an amended motion (Doc. No. 121) and a consent order being entered (Doc. No. 142). And again, the consent order provided for no immediate payment from Debtor, and Sysco agreed to receive just over half of its prepetition arrearage. These

6

were significant concessions from Sysco and the result of hard-fought negotiations that allowed Debtor to continue operations and benefited its estate.

        d.      Debtor's motions to reject and to assume certain leases of non-residential real property (Doc Nos. 66 and 67): 15.5 hours for both motions. Prior to filing its petition, Debtor closed numerous stores. The leases for those stores needed to be rejected and they ultimately were, with the rejection deemed as of the Petition Date as to all non-GE leases, which saved Debtor thousands of dollars in potential post-petition administrative rent claims.

As for the assumption motion, the difficulty for Applicant was that Debtor's records regarding its leases were, quite frankly, a mess. Many of Debtor's leases originated in the 1970s with a predecessor in interest. For that and other reasons (primarily poor document retention and management, it was very difficult for Applicant to identify the status of the leases for Debtor's current stores and to then describe and identify those leases in Debtor's assumption motion. In fact, the original motion that Applicant drafted on Debtor's behalf had to be largely redone due to misinformation provided to Applicant.

        e.      The other motions filed by Debtor early on in this case that were either withdrawn or unsuccessful (i.e., the motion regarding adequate assurance for utility companies and the motion for compensation procedures for professionals) have been removed from the amended invoice submitted by Applicant. See Exhibit A.

**WHEREFORE**, in light of the foregoing, Applicant prays that it be allowed:

(a)    reasonable attorneys' fees in the amount of $143,933.00

(b)    reimbursement of expenses in the amount of $4,185.02; and

7

(c)     for such other and further relief as this Court may deem just and equitable.

This 9th day of June, 2011.

>                              Respectfully submitted,
>
>                              /s/ John J. McManus
>                              John J. McManus
>                              Georgia Bar No. 497776
>                              Counsel for Debtor

2167 Northlake Parkway, Suite 104
Tucker, GA  30084
(770) 492-1000
(770) 492-1100 (facsimile)
jmcmanus@mcmanus-law.com

8

# EXHIBIT "A"

| DATE | ATTORNEY | PROFESSIONAL SERVICES RENDERED | HOURS /QTY (deducted) |
|---|---|---|---|
| 11/18/2010 | C Turner | Edit application to employ Hays Financial as financial advisor to debtor (0.5) | 0.5 |
| 11/19/2010 | C Turner | Draft motion for interim and final compensation procedures … for professional employed in case (3.3); edit application to employ Hays Financial (0.6); edit application to employ tax counsel (0.7) | 4.6 |
| 11/20/2010 | C Turner | Finalize motion for professionals employed in case for interim and final compensation procedures (1.3) | 1.3 |
| 11/23/2010 | C Turner | Draft motion for adequate assurance of utilities (3.3); identify existing utilities and draft exhibit for motion re: same (0.6) | 3.9 |
| 11/29/2010 | C Turner | Draft motion for continuation of worker's compensation insurance ad other insurance policies (2.4) | 2.4 |
| 12/3/2010 | C Turner | File exhibits (0.1) | 0.3 |
| 12/9/2010 | C Turner | Research and draft proposed order re: motion to pay pre-petition claims of critical vendor, Sysco (0.8); research re: forward contracts and commodity contracts (0.6) | 2.0 |
| 12/14/2010 | C Turner | Review invoices sent by the firm to FRCO, funds transferred/paid by FRCO to the firm (2.9); discuss same with John McManus and Sheri Rosenthal-Sevel (1.1); research re: a debtor's hiring of professionals under the bankruptcy code, as well as research re: preferences and avoidance thereof, specifically as it relates to attorneys' fees and retainers (1.8) | 5.8 |
| 12/16/2010 | C Turner | Draft proposed order re: Debtor's use of existing cash management system and bank accounts (0.6); review US Trustee's and Unsecured Creditors' Committee's objections | 6.7 |

9

| DATE | ATTORNEY | PROFESSIONAL SERVICES RENDERED | HOURS /QTY (deducted) |
|---|---|---|---|
| | | to Debtor's motion to use existing cash management and bank accounts (0.6); email correspondence with counsel for Unsecured Creditors' Committee re: same (0.3); mail correspondence with counsel for Finegood Family Trust (0.2); email correspondence with counsel for Carlton Parrott (0.2); phone calls with Judy Dempsey re: keys for GECFFC, Kim Eldridge COBRA payment, rent and taxes for continuing store locations (0.4); email correspondence with counsel for Georgia Power Co re: adequate assurance of payment (0.2); review/analyze amended Georgia Power Co adequate assurance request (0.4); review/analyze subpoena from Department of Labor re: former Famous employee (0.3); review Waste Management proposed contract (0.3); draft amended motion for authorization to pay pre-petition employee wages (0.9) Phone conference with official committee and Christian Turner (1.0); discussion with Judy Dempsey regarding payroll issues with Christian Turner (0.2); worked on Order and Notice for Bar date (1.0) | |
| 12/20/2010 | C Turner | Edit motions to reject and accept non-residential leases of real property ad file same (2.1) | 2.8 |
| 12/22/2010 | C Turner | Draft application to employ Chase CPA as accountant for Debtor (0.7) | 1.0 |
| 12/30/2010 | C Turner | Edit proposed order re: payment of pre-petition employee wages (1.2) | 0.9 |
| 1/3/2011 | C Turner | Edit motion for order authorizing monthly compensation of professionals and file same (2.9) | 2.9 |
| 1/6/2011 | C Turner | Review, analyze GE's objection to Debtor motion to reject leases and caselaw cited therein (2.4) | 2.0 |

10

| DATE | ATTORNEY | PROFESSIONAL SERVICES RENDERED | HOURS /QTY (deducted) |
|---|---|---|---|
| 1/7/2011 | | Edit orders re cash management and use of bank accounts, payment of pre-petition employee wages, denying Imperial Credit Corp.'s motion, and application to employ McManus & Associates (1.2) | 1.6 |
| 1/14/2011 | C Turner | Additional research re rent and tax obligations of a debtor for a rejected lease of non-residential real property (2.8) | 1.4 |
| 1/17/2011 | C Turner | Research re the calculation of damages and administrative claims for leases breached and rejected by debtor (1.2) | 1.4 |
| 1/24/2011 | C Turner | Research re payment of critical vendors (1.2) | 1.2 |
| 1/25/2011 | C Turner | Review/research re payment of critical vendor (1.1) | 1.1 |
| 1/26/2011 | C Turner | Research re the calculation of administrative rent claims for rejected leases (0.6) | 0.6 |
| 1/27/2011 | C Turner | Research re the calculation of administrative rent claims for rejected leases (1.0) | 1.0 |
| 2/2/2011 | C Turner | Review Memphis Gas & Light's adequate assurance request and post-petition service agreement (0.3) | .4 |

11

CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing **Second Amendment to the First Fee Application of John J. McManus & Associates, P.C., Attorney for Debtor, for Approval of Interim Compensation and Reimbursement of Expenses** using the Court's CM/ECF filing system, which will send notice of this filing pursuant to the Court's ECF system. I further certify that a true and correct copy of the same was sent by U.S. mail, postage prepaid, to the following persons or entities at the addresses stated:

James H. Morawetz
Office of U.S. Trustee
362 Richard Russell Bldg.
75 Spring Street, SW
Atlanta, GA 30303

Official Committee of Unsecured Creditors
c/o Mark Duedall
Hunton & Williams
600 Peachtree Street, Suite 4100
Atlanta, GA  30308

Famous Recipe Company Operations, LLC
P.O. Box 3004
McDonough, GA 30253

This 9th day of June, 2011.

/s/ John J. McManus
John J. McManus
Georgia Bar No. 497776

1