IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 11 |
| FAMOUS RECIPE COMPANY | ) | Case No. 10-94027-mhm |
| OPERATIONS, LLC, | ) | Judge Murphy |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| E. CARLTON PARROTT, JR., | ) | |
| | ) | |
| Movant, | ) | |
| | ) | Contested Matter |
| vs. | ) | |
| | ) | |
| FAMOUS RECIPE COMPANY | ) | |
| OPERATIONS, LLC, | ) | |
| | ) | |
| Respondent. | ) | |

## MOTION TO MODIFY THE AUTOMATIC STAY
## PURSUANT TO 11 U.S.C. §362(d)

COMES NOW, E. Carlton Parrott, Jr. (hereinafter, "Movant"), and files this, his Motion to Modify the Automatic Stay Pursuant to 11 U.S.C. §362(d) (hereinafter referred to as the "Motion"), and shows the Court as follows:

## STATEMENT OF FACTS:

1.

Debtor is the Lessee pursuant to a lease agreement entered into in the year 1978 by and between Edgar C. Parrott, as Lessor and Granny's of Atlanta, Inc., as Lessee, for certain leased premises located at 55 Jefferson Street, Newnan, Cowetta County, Georgia (hereinafter referred

1

to as the "Leased Premises"), as modified by that certain first amendment to lease agreement entered into in the year 2000, by and between James H. Parrott and E. Carlton Parrott, Jr., as successors-in-interest to Edgar C. Parrott as lessors and Mrs. Winner's, L.P., as Lessee. (The lease agreement and the first amendment to lease agreement are hereinafter collectively referred to as the "Lease".) (A copy of the Lease is attached hereto as Exhibit "A".)

2.

Movant is the successor-in-interest to James H. Parrot and E. Carlton Parrott, Jr.

3.

Debtor is the successor-in-interest to Mrs. Winners, L.P.

4.

Debtor commenced its case under Chapter 11 of Title 11 of the United States Bankruptcy Code on November 10, 2010 (hereinafter referred to as the "Petition Date").

5.

As of the date of the filing of the instant Motion, personal property owned or in the control of the Debtor currently occupies the Leased Premises. Furthermore, Debtor continues to operate its commercial business within the Leased Premises.

6.

Due to the Debtor's filing for protection under Chapter 11, Movant is prohibited from regaining possession of the Leased Premises pursuant to the Automatic Stay Provisions of 11 U.S.C. §362(a).

2

7.

Counsel for Movant has conferred with counsel for the Unsecured Creditor's Committee, and the Unsecured Creditor's Committee does not oppose the relief sought herein.

## CITATION OF AUTHORITY

a.    <u>Debtor maintains no interest in the Lease and therefore cannot assume the Lease and continue its business within the Leased Premises.</u>

The Lease has been rejected by operation of law in accordance with 11 U.S.C. §365(d)(4).

11 U.S.C. §365(d)(4) states that,

> (A) subject to subparagraph (B), an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the Trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of (i) the date that is 120 days after the date of the order for relief; or (ii) the date of the entry of an order confirming a plan.

> (B) (i) The court may extend the period determined under subparagraph (A), prior to the expiration of the 120- day period, for 90 days on the motion of the trustee or lessor for cause. (ii) if the Court grants an extension under clause (i), the Court may grant a subsequent extension **only upon prior written consent of the lessor in each instance."**

[emphasis added]

Here, the Debtor's initial time period to make a decision regarding the assumption or rejection of the Lease was extended beyond the initial one hundred twenty days contemplated by 11

U.S.C. §365(d)(4)(A)(i) by Order of this Court dated May 10, 2011. [Docket No. 182], the new assumption/rejection deadline being June 6, 2011.

Subsequently, the ninety day extension contemplated in 11 U.S.C. §365(d)(4)(B)(i) expired on June 8, 2011. Here, the lease was rejected by operation of law in accordance with 11 U.S.C. §365(d)(4)(B)(i) on June 8, 2011.    Because the lease has been rejected, and in accordance with 11 U.S.C. §365(d)(4)(A), "the trustee shall immediately surrender that non-residential real property to the lessor". Movant's remedy if the Debtor fails to return possession of the Leased Premises after the rejection of the lease is to seek modification of the automatic stay in order to permit Movant to utilize its State Court remedies to regain possession of the Leased Premises.

  b.  <u>Cause exits to Modify the Automatic Stay</u>.

11 U.S.C §362(d) states in part that, "on request of a party in interest and after notice and a hearing, the Court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay (1) for cause, including the lack of adequate protection of an interest in property of such party in interest.". Here, because the lease was rejected by operation of law, Debtor may not assume the lease and therefore may not continue its business operations within the Leased Premises.    "Cause" therefore exists to afford Movant a modification of the automatic stay to permit Movant to regain possession of the Leased Premises.

4

WHEREFORE, Movant respectfully moves this Court for an order modifying the automatic stay, so that Movant may exercise its state court remedies to regain possession of the Leased Premises through judicial process or otherwise.

Further, Movant respectfully moves this Court for the entry of an order modifying the automatic stay instanter, notwithstanding Bankruptcy Rule 4001(a)(3).

Respectfully submitted this _22_ day of _June_ , 2011.

Victor W. Newmark, Esq.
Georgia Bar No. 541405
Attorney for Movant

Wiles & Wiles, LLP
800 Kennesaw Avenue, Suite 400
Marietta, Georgia  30060-7946
(770) 426-4619
(770) 426-4846 - Facsimile
P131.2mtn-mod.stay.doc

LEASE AGREEMENT
(Completed Construction)

THIS LEASE AGREEMENT is made and entered into on _____, 1978 by and between EDGAR C. PARROTT as lessor (herein called "Lessor") and GRANNY'S OF ATLANTA, INC. as lessee (herein called "Lessee").

IN CONSIDERATION of the mutual promises and covenants contained herein and for other good and valuable considerations, the sufficiency and receipt of which are hereby acknowledged, the parties agree as follows:

1. PREMISES. (a) Lessor hereby leases to Lessee and Lessee hereby leases from Lessor, for the term and upon the conditions contained herein, those certain premises (herein called the "Premises") located at 55 Jefferson Street, Newnan, Coweta County, Georgia and more fully described in Exhibit "A" which is attached hereto and incorporated herein by reference. ~~If Exhibit "A" does not at the time of execution hereof contain a full and complete legal description of the Premises satisfactory to Lessee, the parties agree that such a description will be inserted in this Lease by rider executed by both parties prepared from a survey of the Premises provided by Lessor within a reasonable time after this Lease is fully executed by both parties.~~

(b) The Premises include all buildings, structures, and other improvements constructed and to be constructed thereon, and all easements, rights and appurtenances thereto.

(c) ~~In the event the Premises are part of a larger tract of land, including by way of example, but not by way of limitation, a pad on a shopping center parking lot, then Lessor agrees to enter into a written agreement with Lessee in recordable form and in form reasonably satisfactory to Lessee, providing that no fences or other obstructions prohibiting access to and from the Premises and said larger tract of land shall be constructed during the term of the Lease and any extension or renewal hereof; that its employees, customers, and invitees shall have reciprocal parking rights on said larger tract of land; and that Lessee, its employees, customers and invitees shall have the rights of ingress and egress on and over said larger tract of land to and from all streets, alleys and access ways adjacent to said larger tract of land.~~

2. TERM.

(a) Initial Term. The initial term of this Lease shall be for 15 years, beginning on August 1, 19 78 and ending on July 31, 19 93.

(b) Extended Term(s). Upon the expiration of the initial term of this Lease, Lessee shall have 2 successive options to extend the initial term for 5 years each providing that it shall give Lessor notice in writing at least ninety (90) days prior to the expiration of the initial term of this Lease that it intends to extend the term, and likewise ninety (90) days notice prior to the expiration of each extended term that it intends to extend the term. The extended term(s) shall be subject to all of the terms and conditions of the Lease. The above options are conditioned upon Lessee not being in default of any of the terms and conditions of this lease at time of exercise of said option.

(c) The rental for such renewals are as set out in Paragraph 3(D) and 3(E).

EXHIBIT "A"

3. RENTAL.

(a) For the purposes of this Paragraph 3, the following terms shall have the definition given:

(1) "Lease Year": Each succeeding twelve (12) month period following the Commencement Date.

(2) "Annual Rental":

(A) For the first five (5) Lease years hereof, $16,800.00. *to aug 83*

(B) For the next five (5) Lease years hereof, $17,400.00. *aug 83 to aug 88*

(C) For the third five (5) Lease years hereof, $18,000.00. *aug 88 to aug 93*

(D) If the lease is renewed, for the 4th five (5) Lease years, $22,400.00; and *aug 93 to aug 98*

(E) If the lease is further renewed, for the 5th five (5) Lease years, $24,000.00. *AUG 98 - AUG 03*

(b) During each Lease Year, Lessee shall pay to Lessor the Annual Rental in equal monthly installments. Such installments shall be due and payable, in advance, on or before the first day of each calendar month.

---

$1450 \times 7 = 10,150$

$1500 \times 5 = 7,500$

$17,650.00$ TOTAL $\times 5\% = 88$

$1890.$

4.   COVENANTS OF LESSEE.   Lessee hereby covenants and agrees with Lessor as follows:

(a)   Lessee will pay the monthly rent as herein specified without notice promptly on the first day of each month during the term hereof.  If the first day of the initial term hereof is a day other than the first day of a calendar month, the rent for that month shall be prorated.

(b)   Lessee will pay, in addition to the rent to be paid to Lessor hereunder:

(1)   All utility services provided to the Premises, including but not limited to water, gas, electric, and telephone, as they from time to time shall accrue and be due and payable during the term of this Lease according to separate meters therefor.

(2)   All taxes levied against the Premises, including all real estate taxes, assessments, governmental charges and other taxes levied against the Building and against personal property and trade fixtures placed by Lessee in the Premises.  Lessee shall not be responsible for paying any income, sale, use, excise or other tax imposed on the rents or other sums payable to Lessor hereunder, nor any estate, inheritance, capital gains or gift tax or other tax imposed on account of any transfer of Lessor's interest in the Premises.

If the Premises are not taxed as a separate and independent tax lot, then Lessor and Lessee agree to make application to the appropriate taxing authorities to have the Premises assessed as a separate tax lot.  If the taxing authorities refuse to assess the Premises as a separate tax lot, then the taxes assessed against the tax lot of which the Premises are a part shall be apportioned by Lessor and Lessee so that there shall be attributed to the Premises only an equitable proportion of the taxes assessed against the entire lot.

Taxes assessed against the Premises during the first and last years of the term of this Lease shall be prorated, and Lessee shall be liable only for such percentage of such taxes assessed for such first and last years as the months during which it is obligated to pay rent during such years bears to the total of twelve (12) months.

(c)   Lessee will keep the Premises in a good state of repair, and will be responsible for all repairs, including painting of the interior and exterior of the building, maintaining the roof of the building, all windows, doors and openings, all electrical heating, plumbing, air conditioning and other systems installed within the building, paved parking area, shrubbery, planting, flood lights, and all other accessories, appurtenances and related equipment.  Lessee shall not, however, be responsible for repair of any damage caused by acts or negligence of Lessor, its agents or employees, and Lessor shall at its own expense effect such repairs.

(d)   Lessee will, during the full term of this Lease, and any extensions thereof, and at its own expense, carry:

(1)   Comprehensive general liability insurance in limits referred to as Three Hundred Thousand Dollars ($300,000) each person, Five Hundred Thousand Dollars ($500,000) each accident, and Fifty Thousand Dollars ($50,000) property damage.  The policies shall cover accident or damage in or on the Premises, sidewalk in front

-3-

thereof, parking area, entrance ways, and all portions of
the Building thereon. Such policies shall name Lessor and Lessee *

(2)  Fire insurance, with extended coverage,
in an amount not less than ~~eighty percent (80%)~~ of the insur-
able value of the Building,*naming Lessor and Lessee as in-
sured as their respective interests may appear. Such policy
may also have a mortgagee clause in favor of any mortgagee
of the Premises or holder of a security deed thereon to
whose mortgage or security deed this Lease shall be subordi-
nate as herein provided. Such insurance policy may also
contain, at Lessee's option, a waiver of subrogation provi-
sion. Upon the failure of the Lessee to furnish any policy
of insurance as above set forth, Lessor may, at its option,
obtain the same and the premium therefore shall immediately
become due and payable as additional rent.

(e)  At the expiration of the initial term or any
extension(s) thereof, Lessee will quit and surrender the Premises
in a good and substantial state of repair, reasonable wear and
tear and damage by fire or the elements, or from other causes be-
yond its control, excepted.

(f)  Lessee will comply with all lawful require-
ments of local, state and federal governmental authorities re-
specting the manner in which it uses the Premises.

5.  COVENANTS OF LESSOR.

(a)  Lessor hereby warrants, represents and cove-
nants to, and agrees with, Lessee as follows:

(1)  _Title_.  Lessor is, at the time of the
execution of this Lease, the sole owner(s) in fee simple of
the property herein described, and it has good and market-
able title to and the full right to lease the same for the
term hereof, does warrant and will defend the title thereto,
and will indemnify Lessee against any damage and expense
which Lessee may suffer by reason of any lien, encumbrance,
restriction or defect in the title or description herein of
the Premises. It is expressly understood and agreed that
the above covenant and warranty of Lessor constitute Les-
sor's warranty that in case Lessor does not have the title
and rights aforesaid, then in such event, this Lease shall,
at the option of Lessee, become null and void, and no rent
for the remainder of the term aforesaid shall become due to
Lessor, its legal representatives or assigns, and all ad-
vance rents and other payments shall be returned by Lessor
to Lessee, or Lessee may withhold rent thereafter accruing
until Lessee is furnished proof satisfactory to it as the
party entitled thereto.

(2)  _Quiet Enjoyment_.  Upon Lessee's paying
the rent and observing and performing all of the terms,
covenants and conditions on Lessee's part to be observed and
performed, Lessee may peaceably and quietly have, hold, oc-
cupy and enjoy the Premises and all the appurtenances there-
to without hindrance or molestation.

(3)  _Utility Lines_.  Water lines, sewer lines,
electrical lines, gas lines, and telephone lines are in-
stalled and fully operational.

(4)  _Lessee's Signs_.  Lessee shall have the
right to install and maintain its standard signs advertising
Lessee's business, as revised from time to time, provided they
comply with all zoning or other requirements of City of Newnan.
(5)  _Restrictions_.  There are no restrictions,
easements, or conditions of record, zoning or use, which
would prevent Lessee from erecting Lessee's standard signs.

-4-

*but in no event less than $82,000.00

** records given to secure an indebtedness in original amount of $86,000.00

(6)  Access.  Lessee has and for the full
term hereof shall have access to all street fronts and
rights-of-way adjoining the Premises.  If any street, ad-
joining right-of-way, or all or any part of the parking area
is obstructed or blocked for repairs, reconstruction or
otherwise, to the extent the operation of Lessee's business
is substantially adversely affected thereby, a proportionate
reduction of rent shall be made.  If customer access to the
building is blocked, rent shall abate; provided, however,
rent shall not abate if access is blocked due to acts of
Lessee.

(7)  Encumbrances.  The Premises are free and
clear of any and all encumbrances and restrictions except
real estate taxes for the current tax year and those speci-
fied on the "Schedule of Encumbrances" which is attached
hereto as Exhibit "B" and incorporated herein by reference.

(8)  Payments.  In the event Lessor shall
fail to make the payments on any instrument secured by Les-
sor's interest in the Premises, or taxes or other payments
on the Premises which Lessor is required to pay, Lessee may,
but shall not be required to, make such payments or do such
acts and things as may be necessary to keep the mortgage,
security deed or other encumbrances on the Premises or taxes
on the Premises from being in default, and may deduct the
expense and cost thereof from the next ensuing rentals due
under this Lease, together with interest thereon at nine
percent (9%) per annum.

(9)  Lessee's Personalty and Fixtures.  Les-
see shall be permitted to install in or upon the Premises
personal property such as trade fixtures and equipment and
place liens thereon and grant security interests therein.
Any liens permitted shall be only against personal property
and fixtures installed in the building or upon the Premises
by Lessee and not against the realty.  Lessee may, at the
end of the initial term of this Lease, or any extension(s)
thereof, remove from the Premises its personal property,
such as trade fixtures and equipment, provided it shall
leave the interior and exterior of all of the Premises
"broom clean."  Lessor agrees to execute agreements in favor
of any owner, lessor, secured party or chattel mortgagee
with respect to any such personal property, in reasonable
form satisfactory to such party, that Lessor waives any
landlord's lien or right of levy against such property, that
such property remains personal property notwithstanding any
installation in the Premises and that such property may be
removed by such party at any time so long as any damage or
injury to the Premises caused thereby is fully repaired
without cost or expense to Lessor.

(10)  Zoning and Licensing.  There are pre-
sently no covenants or restrictions which would prohibit or
limit Lessee from operating on the Premises a restaurant and
food service business, and all licenses and permits, includ-
ing but not limited to those pertaining to building and oc-
cupancy, which are necessary to Lessee's business, can be
obtained.  Lessor agrees upon request by Lessee to sign
promptly and without charge therefor to Lessee, any appli-
cation for licenses and permits as may be required by Lessee
for the conduct and operation of the business herein autho-
rized or for the proper use of the Premises, including,
without limitation, applications for licenses, signs, alco-
holic beverages, and any other licenses where the signature
of Lessor or owner is required by the applicable laws of the
state, county, or municipality in which the Premises are
located that are in effect and in force at the time, the
cost of any such licenses and permits to be borne by Lessee.

—5—

Lessee's use of the Premises includes the operation of a
retail take-home restaurant business for on-premises and
off-premises consumption of food and beverages.  Therefore,
this Lease is executed specifically contingent upon the im-
mediate availability of all necessary licenses and permits
pertaining to the Premises, occupancy, signs, driveways
(including ingress and egress to public thoroughfares) and
any other governmental permits required.  In the event that
all such permits and licenses have not been obtained on or
before thirty (30) days from the date hereof, then this
Lease shall, at the option of Lessee, be terminated and can-
celled and both parties will be relieved from any obliga-
tions and/or liabilities hereunder, and all deposits and
payments hereunder shall be refunded forthwith to Lessee.

~~(b)   Lessor shall furnish to Lessee within thirty
(30) days from the date hereof the following; provided, however,
that Lessee may order the following and charge Lessor for the
cost of the same:~~

~~(1)   A title insurance policy with a company
acceptable to Lessee, showing good and marketable title to
the Premises to be vested in Lessor, and not subject to any
restrictions which would prevent the Premises from being
used for Lessee's business, or any encumbrances other than
those identified in Exhibit "B".~~

~~(2)   A certification from appropriate autho-
rity stating that the Premises are properly zoned for the
issuance of occupational licenses for a sit-down, interior
service or take-out restaurant.~~

~~(3)   A current certified survey bearing a le-
gal description in accord with the description contained
herein, made and prepared by a reputable and competent li-
censed surveyor showing:  (i) the area, dimension and loca-
tions of the Premises to the nearest monuments, streets and
alleys on all sides; (ii) spot elevations and bench marks;
(iii) the locations of all available utilities of adjoining
streets, alleys or properties with invert elevations of ba-
sins, manholes, etc.; (iv) location of all recorded ease-
ments against or appurtenant to the Premises; and (v) the
location of all improvements and encroachments.  The survey
shall not disclose any condition, in Lessee's judgment,
which would render the Premises unusable by Lessee for the
purposes stated.~~

~~In the event Lessor cannot furnish Lessee with the instruments
required by subparagraphs (1), (2) and (3) above, or if they are
not obtainable, then, in such event, this Lease shall, at the
option of Lessee, be declared null and void and of no further
force and effect, and any monies paid by Lessee, whether for rent
or otherwise, shall be forthwith refunded to Lessee, and Lessee
shall be released from any further obligations under the terms of
this Lease.~~

6.   <u>MUTUAL COVENANTS</u>.  The following stipulations and
agreements are expressly understood by both the Lessor and the
Lessee, and they do hereby agree to abide by them:
                                        by Item 10 of Special Conditions
(a)   Except as herein specified /(~~except as provided
for the exclusive purposes of Lessee~~), neither party shall have the right
to cancel this Lease for default of the other unless such default
shall remain uncured for a period of thirty (30) days after re-
ceipt of notice in writing to such other party specifying the
nature of the default.

(b)   The covenants and agreements contained in
this Lease are interdependent and are binding on the parties
hereto, their successors and assigns.

(c)   Lessor and Lessee shall make and execute a Memorandum of Lease in recordable form so as to give public notice of the existence of this Lease, which Memorandum shall identify the parties to the Lease, the Premises and any easements provided herein, the Commencement Date, the term of the Lease, any options to extend the term, and such other information as Lessee may reasonably request except such Memorandum will not disclose the rent payable hereunder.

(d)   Lessor hereby waives any right to claim any signs, equipment and/or fixtures to the realty as real property, and same may be removed by Lessee at any time. Lessee may remove the signs, equipment and/or fixtures that may have been affixed to the realty by Lessee, ~~provided that the Premises are restored to a usable condition.~~ provided any damage done to the devised premises caused by such removal will be repaired at expense of Lessee.



(e)   Lessee may make nonstructural alterations, additions and improvements of the Premises from time to time during the term of this Lease, without the consent of Lessor and shall have the right to erect and install such other or additional improvements signs and equipment on the Premises as Lessee may, in its sole judgment, deem desirable for conducting its business thereon or for such other business as Lessee may deem advisable, provided ***

7.   ASSIGNMENT AND SUBLETTING.   Lessee may assign this Lease or let or underlet the whole or any part of the Premises without the written consent of Lessor, provided Lessee remains liable on the Lease, but Lessee will not occupy or use said Premises, or permit the same to be occupied or used, for any business which is unlawful.

8.   CONDEMNATION.

(a)   The parties agree that, should the whole of the Premises be taken or condemned by any competent authority for any public or quasi-public use or purpose during the term of this Lease (including any extended term), this Lease shall terminate as of the time when possession thereof is required for public use and from that day on, the parties shall be released from further obligations hereunder.   Lessee reserves unto itself the right to prosecute its claim for an award based upon its leasehold interest for such taking, without impairing any rights of Lessor for the taking or injury to the reversionary interest in the Premises.

(b)   In the event that a part of the Premises shall be taken or condemned and that (1) the part so taken includes the Building on the Premises or any part thereof, or (2) the part so taken shall remove from the Premises ten percent (10%) or more of the front depth of the parking area thereof or more than a depth of fifteen (15) feet whichever is greater, or (3) the part so taken shall consist of twenty-five percent (25%) or more of the total parking area, or (4) such partial taking shall result in cutting off direct access from the Premises to any adjacent public street or highway, then and in such event, Lessee may, at any time either prior to or within a period of sixty (60) days after the date when possession of the property condemned shall be required by the condemning authority, elect to terminate this Lease, ~~or, if an option to purchase the premises is conferred upon Lessee by other provision of this Lease or other agreement, Lessee may, as an alternative to such termination of this Lease, elect to purchase the Premises in accordance with such purchase option, except that there shall be deducted from the purchase price to be paid for the Premises all of Lessor's award from the condemnation proceeding.~~   In the event that Lessee shall fail to exercise any such option to terminate this Lease ~~or to purchase the Premises~~ or in the event that a part of the Premises shall be taken or condemned under circumstances under which Lessee will have no such option, then and in either such event, Lessor shall, with reasonable promptness, make neces-

(left margin, vertical text) ***that if Lessor so requests, Lessee at termination of lease will restore said premises to their present condition at expense of Lessee, unless said Lessor has previously approved said alterations etc in writing

(right margin, vertical text) default or any other terms and conditions hereof

(right box) SEE SPECIAL

sary repairs to and alterations of the improvements on the Premises for the purpose of restoring the same to an economic architectural unit, susceptible to the same use as that which was in effect immediately prior to such taking, to the extent that may have been necessary by such condemnation, subject to a prorata reduction in rental. In the event that the means of ingress and egress to the Premises are in any way blocked or partially blocked as a result of any road construction or other improvements, Lessor agrees to waive all of Lessee's obligations during such period of construction or improvement.

(c)  A sale in lieu of condemnation shall have the same effect on this Lease as condemnation, giving Lessee the same rights with respect to sale proceeds as to condemnation awards.

9.  DAMAGE OR DESTRUCTION.  If the building or other improvements located on the Premises should be damaged or destroyed by fire or other casualty, Lessee will promptly notify Lessor of such casualty.  If such casualty is insured against, Lessee will, to the extent of the net proceeds of insurance available therefor, repair and restore the building and improvements so damaged or destroyed as nearly as may be to their condition immediately prior to such casualty.  In the meantime, if the Premises should be rendered partially or totally untenantable, there shall be an equitable abatement of rent until the Premises are again rendered tenantable; provided, however, that said period of abatement shall not exceed forty-five (45) days; and provided further that Lessee shall not be relieved during said period of untenantability from its obligation to pay taxes and other charges and to keep the Premises insured as provided herein.  In case of damage or destruction occuring in the last five (5) years of the initial term or during any extended term, to the extent of fifty percent (50%) or more of the insurable value of the building, Lessee may, at its option, in lieu of repairing or replacing the same, elect to terminate this Lease as of the date of said damage or destruction, and in such event, Lessor shall be entitled to receive the proceeds derived from any insurance applicable to the building.  In the event of such termination, Lessor shall refund to Lessee any unearned rents paid in advance of such termination date.

10.  LESSOR DEFAULT.  Should Lessor default in the performance of any covenant required to be performed by Lessor, Lessee may serve upon Lessor a notice specifying the default and requiring performance by Lessor within a period of time set forth in such notice, which shall not be less than thirty (30) days after receipt of said written notice.  In the event that Lessor shall not have remedied the default within the time set forth in the notice, Lessee may consider this Lease terminated, unearned rent shall be prorated to the date of termination and Lessee shall have no further liability.  In the event of such default by Lessor after notice shall have been given as aforesaid, in lieu of termination of this Lease Lessee, at its sole option, may cure Lessor's default and offset the reasonable expense thereof against rent thereafter accruing.  However, if any default shall occur which cannot, with due diligence, be cured within a period of thirty (30) days, and Lessor, prior to the expiration of thirty (30) days from and after the giving of notice as aforesaid, commences to eliminate the causes of such default and proceeds diligently and with reasonable dispatch to take all steps and to do all work required to cure such default, then Lessee shall not have the right to declare the said term ended by reason of such default.

~~11.  LESSEE DEFAULT.  If Lessee shall fail to pay any installment of rent promptly on the day the same shall become due and payable hereunder, and shall continue in such default for a period of ten (10) days after receipt of written notice thereof~~

11.  LESSEE DEFAULT.  See Item 10 of Special Conditions.

-8-

by Lessor, or if Lessee shall fail to promptly keep and perform any other affirmative covenant of this Lease, strictly in accordance with the terms of this Lease and shall continue in default for a period of thirty (30) days after receipt of written notice thereof by Lessor of default and demand of performance, then and in any such event and as often as any such event shall occur, Lessor may, at its option (such default not having been cured):

(a)   terminate this Lease, and enter upon the Premises or any part thereof, either with or without process of law, and expel Lessee or any person occupying the same in or upon the Premises, using such force as may be necessary, and to repossess and enjoy the Premises as in Lessor's former estate; or

(b)   enter upon the Premises without terminating this Lease and relet the Premises, applying said rent from the new tenant on this Lease, and Lessee shall be responsible for no more than the balance that may be due, should a balance exist.

If any default shall occur, other than in the payment of money, which cannot with due diligence be cured within a period of thirty (30) days, and Lessee, prior to the expiration of thirty (30) days from and after the giving of notice as aforesaid, commences to eliminate the cause of such default and proceeds diligently and with reasonable dispatch to take all steps and do all work required to cure such default, then Lessor shall not have the right to declare the lease term ended by reason of such default or enter and relet the Premises as provided above.

12.   SUBORDINATION AND NON-DISTURBANCE.   This Lease shall be subject and subordinate to the lien of any mortgage, security deed, deed of trust or similar instrument (herein called "Mortgage") now existing on or with respect to the Premises or ~~which Lessor may place upon the Premises to finance the cost of construction of the Improvement~~ and to all terms, conditions and provisions thereof ~~to all advances made thereunder~~ and to any renewal, extension, modification or replacement thereof, <u>provided, however</u>, that if this Lease is in full force and effect and there are no defaults hereunder on the part of Lessee, the right of possession of Lessee to the Premises and Lessee's rights arising out of this Lease shall not be affected or disturbed by the mortgagee, grantee, trustee or other secured party in any such instrument (herein called "Mortgagee") in the exercise of any of its rights under the Mortgage or any note secured hereby, nor shall Lessee be named as a party defendant to any foreclosure of the lien of Mortgage, nor in any other way be deprived of its rights under this Lease.   In the event that the Mortgagee or any other person acquires title to the Premises pursuant to the exercise of any remedy provided for in the Mortgage, this Lease shall not be terminated or affected by said foreclosure or sale or any such proceeding, and the Mortgagee shall agree that any sale of the Premises pursuant to the exercise of any rights and remedies under the Mortgage, or otherwise, shall be made subject to this Lease and the rights of Lessee hereunder.   Lessee agrees to attorn to the Mortgagee or such person as its new Lessor and the Lease shall continue in full force and effect as a direct lease between Lessee and Mortgagee or such other person upon all the terms, covenants and agreements set forth in this Lease.

This Lease is conditioned upon any Mortgagee presently holding a Mortgage on the Premises executing, in form acceptable to Lessee, an agreement in writing with Lessee (1) to furnish Lessee and any person who has been identified to such Mortgagee as a holder of a mortgage, security deed or other interest in Lessee's interest in this Lease or any improvement on the Premises with any notice of default under the Mortgage (2) not to disturb Lessee's possession and quiet enjoyment of the Premises so long as Lessee is not in default under the Lease and (3) that any purchaser at any foreclosure sale or by deed in lieu thereof

shall assume the obligations of Lessor hereunder and enter into a supplemental agreement with Lessee for the remaining term of this Lease containing the same terms as contained herein but identifying such purchaser as lessor hereunder.

13.   NOTICES.  All notices and demands permitted or required to be given by either party to the other hereunder shall be deemed to have been fully given when made in writing and deposited in the United States mail, certified or registered, postage prepaid, and addressed as follows:

(a)  to Lessee at P. O. Box 80728, Chamblee, Georgia

or to such other place as Lessee may from time to time designate in a notice to Lessor;

(b)  to Lessor at P. O. Box 142 ~~Whitesburg Circle;~~ Newnan, Georgia  30264

or to such other place as Lessor may from time to time designate in a notice to Lessee.

14.  MISCELLANEOUS.

(a)  The words "Lessor" and "Lessee" as used herein shall include the plural as well as the singular.  Words used in masculine gender include the feminine and neuter and words used in the neuter include the masculine and feminine.  If there be more than one Lessee, the obligations hereunder imposed upon Lessee shall be joint and several.

(b)  The paragraph headings of this Lease are for reference convenience only, and are not a part of this Lease and shall have no effect upon the construction or interpretation of any part hereof.

(c)  Time is of the essence of this Lease and each and all of its provisions.

(d)  The terms, covenants, agreements and conditions herein contained, shall, subject to the provisions as to assignment and subletting, apply to and bind the heirs, successors, executors, administrators, assigns and subtenants of the parties hereto, unless otherwise provided herein.

(e)  This Lease is made and entered into in the State of Georgia, relates to premises located and duties to be performed in the State of Georgia, and shall, in all respects, be interpreted in accordance with the laws of the State of Georgia.

(f)  This Lease represents the entire understanding and agreement between the parties relating to the subject matter hereof and supersedes all prior negotiations and agreements relative thereto.  The language in all parts of this Lease shall in all cases be construed as a whole according to its fair meaning and not strictly for or against either Lessor or Lessee.

(g)  This Lease may be executed in counterparts, each of which, when fully executed, shall be deemed an original, and all of which shall be but one agreement.

(h)  If any term, covenant or condition of this Lease or the application thereof to any person or circumstance shall to any extent be invalid or unenforceable, the remainder of this Lease, or the application of such term, covenant or condition of this Lease shall be valid and enforceable to the fullest extent permitted by law.

(i)  No failure or delay of either party to exercise any right or power given it herein or to insist upon strict

compliance by the other party of any obligation imposed upon it herein and no course of dealing or custom or practice of either party hereto at variance with any term hereof shall constitute a waiver or a modification of the terms hereof by such party or its right to demand strict compliance with the terms hereof by the other party.

(j)   This Lease may be amended and modified only in writing by an instrument signed by Lessor and Lessee, and may not be amended or modified orally.

15.   SPECIAL STIPULATIONS.   The Special Stipulations attached hereto as Exhibit "C" are incorporated herein.   In the event of any conflicts between the Special Stipulations and the foregoing provisions of this Lease, the Special Stipulations shall control.

IN WITNESS WHEREOF, the parties have executed this Lease and affixed their seals hereto.

Signed, sealed and delivered in the presence of:

"LESSOR":

EDGAR C. PARROTT

_____
Witness

_____
Edgar C. Parrott

_____
Notary Public

Signed, sealed and delivered in the presence of:

"LESSEE":

GRANNY'S OF ATLANTA

_____
Witness

By: _____

Title: _____

_____
Notary Public
Notary Public, Fulton, State at Large
My Commission Expires June 30, 1991

Attest: _____
Secretary
[CORPORATE SEAL]

Signed, sealed and delivered in the presence of:

LEON ECONOMY ASSOCIATES

_____
Witness

By: _____

Title: _____

_____
Notary Public

[CORPORATE SEAL]

EXHIBIT "A"

All that certain tract or parcel of land located on the east side of Jefferson Street in the City of Newnan, Coweta County, Georgia and being more particularly described in accordance with survey and plat made by John R. Christopher dated 5/14/76, recorded at Plat Book _21_, Page _13_, Coweta County, Georgia records as follows:

BEGIN at an iron pin on the east side of Jefferson Street which iron pin is 263 feet South of the intersection of the east side of Jefferson Street with the centerline of Berry Avenue as measured along the east side of Jefferson Street and from said beginning point run thence South 5° 14' West along the east side of Jefferson Street 130.6 feet to an iron pipe; thence South 87° 27' 20" East 165.8 feet to a fence post corner; thence South 3° 28' 40" West 66.8 feet to an iron pipe; thence South 87° 9' 20" East 162.36 feet to an iron pipe; thence North 7° 44' East 88.02 feet to an iron pipe; thence North 6° 41' 40" East 49.9 feet to an iron pipe; thence North 5° 16' East 56.59 feet to an aluminum pin; thence North 86° 45' West 335.26 feet to the beginning point.

## AMENDMENT OF LEASE AGREEMENT

THIS AMENDMENT, made and entered into this ____ day of _____, 1978, by and between Sara Gray Hollis Parrott, Executor U/W Edgar C. Parrott (hereinafter referred to as "Lessor"), and Granny's of Atlanta, Inc. (hereinafter referred to as "Lessee"), W I T N E S S E T H :

WHEREAS, by Lease Agreement dated July 21, 1978, Lessor agreed to lease to Lessee certain property located at 55 Jefferson Street, Newnan, Coweta County, Georgia, more particularly described in said Lease Agreement, a copy of which is attached hereto as Exhibit "A" and hereby incorporated herein by reference; and

WHEREAS, Lessor and Lessee wish to amend said Lease Agreement in one particular relative to the provisions concerning default by Lessee in the payment of rent and the utilization of remedies provided therefor by Lessor;

NOW THEREFORE, in consideration of the mutual covenants and benefits flowing to and from each of the parties hereto, it is hereby agreed that Item 10 of the Special Conditions of said Lease is hereby amended by deleting the phrase:"(i) the rent or any installment thereof is not paid promptly when and where due;" from the first and second lines thereof and inserting in lieu thereof the following phrase: "(i) the rent or any installment thereof is not paid within ten (10) days after Lessor gives Lessee written notice of the failure of Lessee to pay said rent or any installment thereof when and where due;".

This Agreement shall be binding not only upon the parties hereto, but also upon their respective heirs, administrators, executors, successors and assigns.

IN WITNESS WHEREOF, Lessor and Lessee have executed this Amendment to Lease Agreement, this the day and year first above written.

_____
Sara Gray Hollis Parrott, Executor
U/W Edgar C. Parrott, Lessor

Granny's of Atlanta, Inc., Lessee

By: _____

Attest: _____

OVER G DAVIS, P. A
ATTORNEY AT LAW
P O BOX 1038
NEWNAN, GEORGIA
30264

## FIRST AMENDMENT TO LEASE AGREEMENT

THIS AMENDMENT TO LEASE AGREEMENT (this "Agreement") is made and entered into this ___ day of _____, 2000, by and between and JAMES H. PARROTT and E. CARLTON PARROTT, JR., as successor in interest, (hereinafter referred to as "Lessor") and MRS. WINNER'S, L.P., a Georgia limited partnership, as successor in interest (hereinafter referred to as "Lessee").

### W I T N E S S E T H:

WHEREAS, Lessee leases and operates that certain property located at 55 Jefferson Street, Newnan, Georgia 30263, known as Mrs. Winner's restaurant Unit #323, being more particularly described on Exhibit "A" attached hereto and by this reference incorporated herein (Hereinafter referred to as the "Premises"; and Lessee is the current "Lessee" or "Tenant" under that certain Lease dated July 21, 1978, (hereinafter referred to as the "Lease"); and

WHEREAS, Lessor and Lessee desire to modify and amend certain terms and provisions of the Lease, and to restate the Lease as so amended, all in accordance with the terms and conditions set forth below.

NOW, THEREFORE, for and in consideration of the Premises and of Ten and No/100 Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties do hereby agree as follows:

1.   Amendments to Lease:  Effective as of the day and year first written above (the "Effective Date"), the Lease shall be and is hereby modified and amended by Lessor and Lessee as follows:

  A.   Term:  Section 2(a) and (b) of the Lease Agreement shall be deleted in its entirety and the following inserted in lieu thereof:
  "(a.) Initial Term.  The initial term of this Lease shall commence on the 1st day August, 1978 and expire on the 31st day of July, 2003."
  "(b.) Extended Term(s).  Upon the expiration of the initial term of this Lease, Lessee shall have three (3) successive options to extend the initial term for five (5) years each providing that it shall give Lessor notice in writing at least ninety (90) days notice prior to the expiration of each extended term that it intends to extend the term.  The extended term(s) shall be subject to all of the terms and conditions of the Lease.  The above options are conditioned upon Lessee not being in default of any of the terms and conditions of the Lease at time of exercise of said option.

  B.   Rental.  Section 3(a)(2) of the Lease Agreement shall be deleted in its entirety and the following inserted in lieu thereof:
  (2)  "Annual Rental":
      (A)  If the Lease is renewed for the 1st five year option (8/1/03 – 7/31/08), $30,000.00; and
      (B)  If the Lease is renewed for the 2nd five year option (8/1/08 – 7/31/13), $36,000.00; and
      (C)  If the Lease is renewed for the 3rd five year option (8/1/13 – 7/31/18), $42,000.00.

  C.   Percentage Rent:  Section 3 of the Lease Agreement shall be modified by adding the following Section 3(a)(3):
  (3)  "Percentage Rent":  In addition to Annual Rental, Lessee shall pay to Lessor as "Percentage Rent", in the manner and upon the conditions and at the times hereinafter set forth for each Lease Year of the Term, a sum equivalent to the amount, if any, by which five percent (5%) of Gross Sales for such Lease Year exceeds the Annual Rental as set forth below:
      (A) on annual gross sales exceeding $600,000 during the 1st five year option (8/1/03 – 7/31/08); and
      (B) on annual gross sales exceeding $720,000 during the 2nd five year option (8/1/08 – 7/31/13); and
      (C) on annual gross sales exceeding $840,000 during the 3rd five year option (8/1/13 – 7/31/18).

D.  Annual Gross Sales: Section 3 of the Lease Agreement shall be modified by
adding the following Section (3)(a)(4):

(4) "Annual Gross Sales" means the amount received by Tenant from the sale
of products or performance of services made on or from the Premises,
including commissions from vending machines, but excluding non-edible
promotional items, redemption of gift certificates, sales tax or any similar
taxes which are by law required to be completed separately and paid by the
customer, discounted sales to employees, and the proceeds from the sale of
any Personalty erected or installed on the Premises by Tenant.

(A) Within sixty (60) days following the end of each Lease Year,
Tenant will furnish Landlord with a statement signed and certified
by Tenant to be correct (or if this Lease is assigned or the Premises
sublet, then such statement will be furnished, signed and certified
by the assignee or subtenant of Tenant, as applicable) setting forth
the amount of the Gross Sales made during the prior Lease Year.  In
the event that Percentage Rent shall be payable hereunder, such
Percentage Rent will be paid by Tenant to Landlord with the
delivery of the aforementioned statement.

(B) Tenant will keep books of account, in accordance with good
accounting practice, accurately showing all sales and income of the
business conducted on the Premises (or, if this Lease is assigned or
the Premises sublet, the assignee or subtenant of Tenant shall do
so).  Such books of account, for the preceding three (3) year period
only, will be open and available for inspection by Landlord, or
Landlord's authorized agents, at any reasonable time following not
less than ten (10) business days' prior written notice to Tenant.

(C) All reference in this Lease to "Annual Rent" shall include
Percentage Rent calculated and payable as set forth herein.

(D) It is expressly understood and agreed between parties that, although
Annual Rent paid to Landlord by Tenant for its use of the Premises
is partially based upon a percentage of Gross Sales, nothing herein
contained shall be deemed, held or construed to make Landlord a
partner or associate of Tenant in the conduct of Tenant's business;
it being expressly understood and agreed that the relationship
between the parties is and shall at all times remain that of Landlord
and Tenant.

(E) Landlord recognizes the benefit derived by it through additional
Percentage Rent which would result from increased Gross Sales
from the Premises likely to occur as a result of remodeling by
Tenant in accordance with the terms of the Lease; therefore,
Landlord agrees in the event of such remodeling that Tenant may
retain all Gross Sales from the Premises except for the excess, as
defined in Section 4, of Gross Sales for the Lease Year prior to such
remodeling, until such time as Tenant has recovered from what
would otherwise, but for this provision, be paid to Landlord as
additional Percentage Rent based upon actual Gross Sales, the total
cost of labor and materials for actual remodeling and expansion of
the improvements, equipment, trade fixtures and fixtures in or at the
premises, plus interest at the rate of ten percent (10%) on such
amounts expended until they have been fully repaid hereby.  It is
the intention of this provisions that the maximum amount of Gross
Sales per Lease Year from which Percentage Rent is to be
computed shall be the lesser of actual Gross Sales or the amount of
Gross Sales for the Lease Year prior to such remodeling until such
time as Tenant has recouped the above-described expenditures and
interest from what would otherwise, but for this provision, be paid
to Landlord as Percentage Rent based upon actual Gross Sales, and
from and thereafter, there will be no maximum on the Gross Sales
upon which Percentage Rent will be computed and payable.



2. Upon full execution of this Amendment, Lessor and Lessee agree that the notice to extend the term has been exercised for the first renewal option which begins on August 1, 2003 and extends to and through July 31, 2008.

3. Except as above amended, all of the terms and conditions of the Lease shall remain in full force and effect and are hereby ratified and confirmed by Lessee and Lessor.

4. The terms and provisions hereof shall be binding upon and inure to the benefit of Lessor and Lessee, and upon the heirs, executors, representatives, administrators, successors and assigns of Lessor and Lessee.

5. This Agreement shall be governed by and construed in accordance with the laws of the State where the Premises is located.

IN WITNESS WHEREOF, the parties, intending to be legally bound, have caused this Agreement to be executed under seal as of the day and year first written.

LESSOR:

JAMES H. PARROTT and
E. CARLTON PARROTT, JR.

Witness:

By: _James H. Parrott_
_____        Name:  James H. Parrott
Name: _____

By: _E. Carlton Parrott, Jr._
_____        Name:  E. Carlton Parrott, Jr.
Name: _____


LESSEE:

MRS. WINNER'S, L.P.,
a Georgia limited partnership

By: Winners Corporation, a Georgia
corporation, its general partner

Witness:

_Melissa Lissa_                     By: _Jeryl M. McIntyre_
Name: _Melissa Lessor_              Name:  Jeryl M. McIntyre
                                    Title:  Vice President

_Debra Duggan_                      By: _____
Name: _Debra Duggan_                Name:  Robert S. Stallings
                                    Title:  VP - Asst. Secretary

                                    (CORPORATE SEAL)

2. Upon full execution of this Amendment, Lessor and Lessee agree that the notice to extend the term has been exercised for the first renewal option which begins on August 1, 2003 and extends to and through July 31, 2008.

3. Except as above amended, all of the terms and conditions of the Lease shall remain in full force and effect and are hereby ratified and confirmed by Lessee and Lessor.

4. The terms and provisions hereof shall be binding upon and inure to the benefit of Lessor and Lessee, and upon the heirs, executors, representatives, administrators, successors and assigns of Lessor and Lessee.

5. This Agreement shall be governed by and construed in accordance with the laws of the State where the Premises is located.

IN WITNESS WHEREOF, the parties, intending to be legally bound, have caused this Agreement to be executed under seal as of the day and year first written.

LESSOR:

JAMES H. PARROTT and
E. CARLTON PARROTT, JR.

Witness:

By: _____
Name: _____     Name:  James H. Parrott

By: _____
Name: _____     Name:  E. Carlton Parrott, Jr.

LESSEE:

MRS. WINNER'S, L.P.,
a Georgia limited partnership

By: Winners Corporation, a Georgia
corporation, its general partner

Witness:

By: _____
Name: Margaret J. Kaufman     Name: Jeryl M. McIntyre
Title: Vice President

By: _____
Name: Laura McRae     Name: Robert S. Stallings
Title: V.P. - Asst. Secretary

(CORPORATE SEAL)

EXHIBIT "A"

LEGAL DESCRIPTION

A CERTAIN TRACT OR PARCEL OF LAND IN THE CITY OF NEWNAN, COWETA COUNTY, GEORGIA, LOCATED ON THE EAST SIDE OF JEFFERSON STREET AND COMPOSED OF LOTS NOS. ONE AND TOW OF THE PROPERTY ORIGINALLY KNOWN AS THE J. P. BREWSTER ESTATE, AS SHOWN BY PLAT OF SAME MADE ON FEBRUARY 25, 1918, AND RECORDED IN THE OFFICE OF CLERK, COWETA SUPERIOR COURT IN DEED BOOK 16, PAGE 627, AND DESCRIBED AS FOLLOWS:

BEGIN AT A POINT ON THE EAST SIDE OF SAID JEFFERSON STREET, WHERE PROPERTY HEREIN CONVEYED CORNERS WITH THE NORTHWEST CORNER OF LOT OF DUKE JONES AND RUN THENCE NORTH ALONG THE EAST SIDE OF SAID STREET 130.6 FEET TO LANDS OF ARCHIE D. ADAMS; THENCE EAST ALONG THE LANDS BELONGING TO ARCHIE D. ADAMS A DISTANCE OF 312 FEET TO LANDS KNOWN AS BLOCK B JONES SUBDIVISION; THENCE SOUTH ALONG THE LINE OF SAID LANDS KNOWN AS BLOCK B JONES SUBDIVISION 197.3 FEET TO OTHER LANDS KNOWN AS BLOCK B JONES SUBDIVISION; THENCE WEST ALONG LINE OF SAID BLOCK B JONES SUBDIVISION 162 FEET TO THE SOUTHEAST CORNER OF LOT OF DUKE JONES; THENCE NORTH ALONG THE EAST LINE OF SAID LOT OF DUKE JONES 66.8 FEET TO THE NORTHEAST CORNER OF SAID LOT OF DUKE JONES; AND THENCE WEST ALONG THE NORTH LINE OF SAID LOT OF DUKE JONES 150 FEET TO THE BEGINNING POINT ON JEFFERSON STREET.

Less and except the undeveloped portion of the above described property. said undeveloped portion being that property lying south of an extension of the southern boundary line running east from Jefferson Street and that portion of the above described property lying east of the improved and maintained (paved) portion of the premises IN No event shall the excepted portion contain any property currently utilized by tenant for operations parking vehicular traffic, or trash disposal or any other use relative to the operation of the business.



## CERTIFICATE OF SERVICE

This is to certify that I have this day served a true and correct copy of the within

and foregoing MOTION TO MODIFY THE AUTOMATIC STAY PURSUANT TO 11

U.S.C. §362(d) by depositing a copy of same in the United States mail with sufficient

postage affixed thereon to ensure delivery to the person and address listed below:

John J. McManus, Esq.
John J. McManus & Associates, PC
Attorney for Debtor
2167 Northlake Parkway, Suite 104
Tucker, Georgia 30084

Christian Turner, Esq.
John J. McManus & Associates, PC
Attorney for Debtor
2167 Northlake Parkway, Suite 104
Tucker, Georgia 30084

Office of the United States Trustee
75 Spring Street, S.W.
3rd Floor
Atlanta, Georgia  30303

Official Committee of Unsecured Creditors
c/o Mark Duedall, Esq.
Hunton & Williams
600 Peachtree Street, Suite 4100
Atlanta, Georgia 30308

Famous Recipe Company Operations, LLC
P.O. Box 3004
McDonough, Georgia 30253

This ___22___ Day of ___June___, 2011.

_Victor W. Newmark_
Victor W. Newmark, Esq.
Georgia Bar No. 541405

Wiles & Wiles, LLP
800 Kennesaw Avenue, Suite 400
Marietta, Georgia  30060-7946
(770) 426-4619
(770) 426-4846 - Facsimile
P131.2mtn-mod.stay.doc

6