UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | ) Chapter 11 |
| | ) |
| **FAMOUS RECIPE COMPANY OPERATIONS,** | ) Case No. 10-94027 - MHM |
| **LLC, d/b/a Mrs. Winner's Chicken & Biscuits,** | ) |
| | ) |
| Debtor. | ) |

**JOINT MOTION OF DEBTOR AND THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS TO CONVERT
CASE TO A PROCEEDING UNDER CHAPTER 7**

COMES NOW, Famous Recipe Company Operations, LLC, d/b/a Mrs. Winner's Chicken & Biscuits, debtor and debtor in possession herein ("*Debtor*"), and the Official Committee of Unsecured Creditors (the "*Committee*", and collectively with Debtor, "*Movants*"), and hereby file this Motion to Convert Case to a Proceeding Under Chapter 7 (the "*Motion*") pursuant to 11 U.S.C. § 1112. In support of this Motion, Movants respectfully show the Court as follows:

## I. JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. BACKGROUND

2. Debtor filed a voluntary petition for relief on November 10, 2010 (the "*Petition Date*"), thereby initiating the above-captioned bankruptcy proceeding (the

"*Bankruptcy Case*").  Since the Petition Date, Debtor has acted as debtor in possession pursuant to §§ 1107 and 1108 of Title 11 of the United States Code (the "*Bankruptcy Code*").

3. The Committee was appointed in the Bankruptcy Case on November 23, 2010.

4. As of the Petition Date, Debtor operated fourteen "Mrs. Winner's" style quick-service chicken restaurants.  There were also sixteen franchised or licensed locations, supported at various times by Debtor, but operated by third parties pursuant to license and/or franchise agreements or arrangements with Winners International Restaurant Franchise Services, Inc., a non-debtor affiliate ("*WIRFS*").

### III.  THE SALE PROCESS

5. As noted in prior pleadings in this Court, as of the Petition Date, Debtor had unpaid trust fund tax liability exceeding $3 million.  Given Debtor's small remaining operations (having closed many stores prior to the Petition Date), it became quickly apparent to Debtor and the Committee that this overhang of priority claims would not allow any feasible Chapter 11 plan to be proposed or confirmed.

6. Accordingly, since early this calendar year, Debtor, along with the Committee and certain non-debtor affiliates (and the foregoing parties' professionals), have been working cooperatively to identify, and then negotiate with, potential buyers for Debtor's operations.  This proved exceedingly challenging, for the following reasons:

   A. Debtor's remaining store operations were in difficult shape, as years of limited funds had prevented Debtor from upgrading its stores.  Such limits on available

2

funds even preventing some stores from fixing basic amenities as they went bad, such as air conditioning;

      B.    Debtor's remaining base of stores was too small to allow a buyer to achieve successful gains, absent opening many new stores to get customer attention, vendor rebates, advertising scope, and other things that add value for a much larger operation;

      C.    As noted in prior pleadings, the intellectual property associated with Debtor's locations was owned by WIRFS, a non-debtor affiliate. While Movants believed Debtor may have an argument in support of Debtor's ownership, that would require litigation. If the proceeds had been high enough, then a deal could have been had where a percentage of the proceeds would be allocated to WIRFS (subject to this Court's approval), but the bids received by Debtor were all too low for Debtor and WIRFS to agree to an allocation that would cover Debtor's administrative expenses (which continued to grow) and provide a satisfactory return to WIRFS;

      D.    Debtor's landlords' patience had run out. While this group proved very supportive during this bankruptcy case, it was apparent early in the sale process that there would not be sufficient proceeds from any sale to pay the over $1 million in landlord cure claims, plus the costs needed to immediately bring the stores up to par. Landlords became increasingly concerned about Debtor's viability and the results of this sale process, and time ran out as Debtor's section 365(d)(4) periods had expired (and could not be further extended without written landlord consent).

7. In light of all of this, the bids received by Debtor (none of which got so far as a purchase agreement) in the $150,000-$1,000,000 million range (which were not even all cash, most of them involving a note paid over time) proved insufficient to (i) provide a return to WIRFS, (ii) allow for payment of the critical vendor superpriority claim of Sysco, (iii) cover any material amount of landlord cure claims, and (iv) cover remaining administrative expenses.

8. In early August, it became clear that no bidder would provide a sufficient bid. Debtor's operations had continued to decline, and available cash was close to exhaustion, thus Debtor was forced to close its remaining stores. This was completed by mid-August, 2011. Since that time, counsel to Debtor and counsel to the Committee have been working on an orderly windup, ensuring that employee's final payroll checks cleared, and that other assets (including a claim on Debtor's director's & officers insurance policy) were protected as much as possible. At this point, conversion for a Chapter 7 Trustee to administer these remaining assets is appropriate.

## IV.  REQUESTED RELIEF

9. Movants seek an order converting this case to a case under chapter 7 due to the mounting and already substantial cost of administration of this estate in chapter 11, and the absence of an operating business of Debtor.

10. Conversion of this case to a proceeding under chapter 7 of the Bankruptcy Code pursuant to 11 U.S.C. § 1112(b) is appropriate and in the best interests of the creditors of Debtor and the estate. Administration of this case will be more effective and efficient under chapter 7 of the Code since the estate will be able to minimize expenses

and ensure a maximum recovery by not incurring expenses unique to chapter 11 such as U.S. Trustee fees and expenses related to filing monthly operating reports. There is no likelihood of rehabilitation or of a plan being confirmed in this case.

11. Counsel to Debtor and to the Committee have conferred with the Office of the United States Trustee, who has no objection to the relief sought.

12. Accordingly, Movants, with the consent of the U.S. Trustee, request the immediate entry of an order converting this case to a proceeding under chapter 7 of the Bankruptcy Code.

## V. **NOTICE**

13. Notice and copies of this Motion have been provided to: a) the Office of the United States Trustee, and b) all parties who have filed requests for notice under Bankruptcy Rule 2002. In addition, once a hearing is set on this Motion, notice of the hearing will be sent to all known creditors pursuant to Bankruptcy Rule 2002(a)(4).

WHEREFORE, Movants respectfully request that the Court enter an order (i) converting this case to a case under chapter 7, and (ii) providing such other and further relief as is just and proper.

Dated:  September 1, 2011.				Respectfully submitted,

**JOHN J. MCMANUS & ASSOCIATES, P.C.**

/s/
John J. McManus
Georgia Bar No. 497776
2167 Northlake Parkway, Suite 104
Tucker, Georgia  30084
Tel:    770-492-1000
Fax:    770-492-1100
Email: jmcmanus@mcmanus-law.com

*Counsel to Debtor*


HUNTON & WILLIAMS LLP

/s/
Mark I. Duedall
Georgia Bar No. 231770
600 Peachtree Street, N.E. - Suite 4100
Atlanta, Georgia 30308-2216
Tel:    404-888-4034
Fax:    404-602-8864
Email: mduedall@hunton.com

*Counsel to The Official Committee of Unsecured Creditors*

## CERTIFICATE OF SERVICE

This is to certify that I, Mark I. Duedall, have this date served a true and correct copy of the foregoing Joint Motion of Debtor and the Official Committee of Unsecured Creditors to Convert Case to a Proceeding under Chapter 7 by the Court's ECF system, which will generate an electronic mail, with a link to the motion attached, to all parties that have filed a notice of appearance in this case.

      This 1st day of September, 2011

                                                        /s/
                                          Mark I. Duedall
                                          Georgia Bar No. 231770